FERRIS *vs.* HENDRICKSON and WILLIAMSON, Executors of WILLIAMSON, who was an Executor and Devisee of REM WILLIAMSON.

---

A person who suffers himself to do an unlawful act, whereby another is injured, shall make satisfaction. Therefore : where a mortgage was made to F. who took an assignment of a prior mortgage from W. but did not get it recorded and W. was afterwards induced to acknowledge satisfaction of the mortgage which he had assigned, whereby F.'s security was overreached by an intermediate judgment : *Held,* that W.'s estate should make reparation.

---

October 13.
1831.

*Mortgagee
overreached
by the act of
the assignor
of a mortgage.*

ON the fourteenth day of May one thousand eight hundred and twelve, one William Foster executed a mortgage in fee of certain real estate in the city of New York, of which he was seized in fee, to Rem Williamson of Kings county, to secure the payment of one thousand and one hundred dollars with interest. This mortgage was duly acknowledged and registered about the time of its date.

Afterwards, on the third day of September one thousand eight hundred and fourteen, the complainant agreed to lend to Foster two thousand one hundred dollars on mortgage of the same premises, a portion of the money to be applied to the payment of the mortgage held by Williamson upon its being assigned to the complainant to stand as a security collateral to the new bond and mortgage. With this understanding, a bond and mortgage were made and executed by Foster to the complainant for the whole sum of two thousand one hundred dollars with interest; and being duly acknowledged, the mortgage was put upon record on the fifth day of the same month. The complainant paid to Foster all the money, except the amount due on Williamson's mortgage, which he retained until the assignment could be procured.

On the twenty-eighth day of September in the same year, the assignment was procured of the Williamson mortgage, drawn upon the back of the mortgage itself, executed by Williamson under his hand and seal, and witnessed by his son Stephen B. Williamson and also by Foster, the mortgagor. It purported, that for the consideration of one dollar to him in hand paid, and that the mortgage might stand as a security to the complainant for moneys loaned to the mortgagor, he, Williamson, thereby assigned, transferred and set over the mortgage and bond, with the appurtenances, to the complainant; to hold to him and his assigns in the same and in as beneficial a manner as the mortgagee might or could hold it without such transfer; but with a declaration that the mortgagee or his representatives were never to be accountable in any manner for the mortgage money or any part thereof.

The assignment was delivered to the complainant on or about the day of its date; and the money which he had held to meet this object was at the same time paid over. Whether he paid it to Williamson or to Foster was made a question in the cause and considerable importance was attached to it.

The complainant held the mortgage so assigned to him without ever recording the assignment.

A judgment for a small amount had been recovered against Foster in the court of common pleas for the city of New York,

1831.

FERRIS
v.
HENDRICK-
SON.

which he represented was paid, although it stood open of re-cord against him; and at the time of executing the mortgage to the complainant, he made oath that the property was free from all incumbrances, save such last mentioned mortgage. Notwithstanding which, Foster, shortly afterwards, connived with one Nott, who appeared to have a control of the judgment, and permitted an execution to be issued and the property covered by the mortgages to be advertised for sale by the sheriff. It was sold under the execution on the fifth day of October one thousand eight hundred and fourteen and purchased by Nott for a small sum, who obtained a title from the sheriff and thus overreached the mortgage which had been given directly to the complainant; and by virtue of such title the property afterwards passed into the hands of others who claimed to hold and did hold as *bona fide* purchasers.

In order, however, to render the title which Nott had acquired by the sheriff's sale available, he and one Morrell, having ascertained that the complainant had omitted to record the assignment made by Williamson of the first mortgage, applied to the latter for a certificate or satisfaction piece to cancel such mortgage, and succeeded in persuading him to sign a certificate in the usual form, bearing date the eleventh day of October one thousand eight hundred and fourteen. By means of this and on the twenty-sixth of the same month the mortgage was cancelled of record: without the knowledge of the complainant, who thereby was deprived of all the benefit of the original mortgage which he held by assignment and of the security of the second mortgage in consequence of the sheriff's sale.

By this fraudulent combination and proceeding on the part of Foster and his colleagues, the complainant's mortgage debt was entirely lost to him, unless he could compel the defendants, who represented Williamson's estate, to make good the amount of the cancelled mortgage; and this was the object of the present suit.

A decree was at first obtained by default, but the execution upon it was stayed upon Rem Williamson's bringing two thousand dollars into court; and he had leave to answer.

Rem Williamson died without having answered the bill; and the complainant, by bill of revivor and supplement, made Stephen B. Williamson, his executor and devisee, a defendant, who answered the bill. In this answer, (among other things) he alleged, that in August one thousand eight hundred and fourteen, Foster proposed to take up the bond and mortgage and to give Rem Williamson another in lieu thereof on his place at Success; that Rem Williamson agreed thereto; took a new bond and mortgage and gave up the one in question in this suit; that this defendant believed the said bond and mortgage were taken away by Foster; that soon after, Foster and another man called, with an endorsement on the bond and mortgage in question in this suit, and requested Rem Williamson to sign it; that he, at first, declined, but being pressed, signed it and believed he signed it as a witness; that a short time after, two persons called on Rem Williamson, who stated their names to be Nott and Morrell, and, after being pressed by them, he signed a certificate to cancel the said mortgage; that the defendant did not believe Rem Williamson knew how his cancelling the mortgage would impair any security of the complainant; that the said Rem was then about seventy-six years of age, uneducated, ignorant of the consequences and did not believe he was doing wrong.

This Stephen B. Williamson died while the suit was progressing and the present defendants, his executors, were made parties. In their answer, they admitted assets (over and above the two thousand dollars paid into court) sufficient to satisfy any demand brought against Rem Williamson.

The evidence on the part of the complainant showed that he would not and did not part with so much of the money (agreed to be lent) as was sufficient to take up the mortgage held by Williamson until it was assigned and delivered to him; that by the agreement of Foster, under the advice of counsel, the intention was, not to cancel the mortgage upon paying the amount to Williamson, but for the complainant to hold it as a subsisting security collateral to the bond and mortgage which he was taking from Foster; that in pursuance of their arrangement, the mortgage was brought to the complainant's counsel,

who wrote the assignment on the back of it and in whose hands' the money was placed for the purpose of being paid over; that the mortgage, with the assignment thus written, was taken back to Williamson, who thereupon executed the assignment in presence of his son and of Foster, both of whom then returned, (the former acting as the agent of his father in the transaction) and delivered the mortgage and assignment to the complainant's counsel, who immediately paid over the money to the son, on behalf of the father, the assignor.

The evidence on the part of the defendants tended to show, that the transaction took a different course ; that Foster, in fact, received the money ; that Williamson had nothing to do with the complainant; that Foster had given to Williamson a mortgage on a farm at North Hempstead and for the same debt in the place of the present mortgage, which was thereupon given up to Foster; and that, at his request, Williamson afterwards executed the assignment and delivered it to Foster, without receiving any money from the complainant.

Mr. *Robert Bogardus*, on the part of the complainant, argued, that as Rem Williamson assigned the bond and mortgage from Foster to him in order to stand as security to the complainant for the amount contained in them and having chosen to discharge the same and thereby defeated the security, his estate is accountable in equity to the complainant for the amount. His interfering with the assigned security was a fraud upon the complainant. And the counsel also cited 1 *Chitty's Pl.* 55, 56, 78, 79 ; 1 *Rev. Laws of* 1813, *p.* 311 ; 1 *Saunders*, 216.

Mr. *Peter A. Jay*, for the defendants.

Rem Williamson did not acknowledge satisfaction of his mortgage with a fraudulent intent. The complainant has not shown he sustained a loss by means of Rem Williamson's acts. The complainant is entitled to no remedy against the executors. This is a demand founded on a wrong, which dies with the wrong doer : 1 *Chitty*, 77. The assignment contained no,

warranty; and if Williamson had sold the same land twice, the first purchaser could have recovered nothing against him, even though he had lost the land through his own neglect in not recording his deed. The complainant is not entitled to relief for an injury occasioned by his own neglect. Even if Rem Williamson's son was a party to a fraud, the complainant cannot have relief against the estate of Rem Williamson.

THE VICE-CHANCELLOR. There is no reason to suppose nor indeed is it contended that Rem Williamson, the assignor of the mortgage, had any fraudulent intention or design of injuring the complainant by giving the certificate in the manner he did. He was an old man, and probably forgetful and ignorant of consequences, and, therefore, misled by the artful persuasions of the designing knaves who beset him on the occasion.

The complainant has also been remiss: in the first place, in not seeing that the judgment was satisfied of record before he advanced one dollar of his money to Foster or in not discovering the sheriff's advertisement of sale and putting a stop to this proceeding before it was too late; and, secondly, in not placing the assignment from Williamson upon record. Had he attended to the first, he would have saved the whole of his money; and had he taken the latter precaution, he would have, at least, prevented the loss of the eleven hundred dollars for which the assigned bond and mortgage were given. He was not bound, however, to record the assignment. It was a valid instrument without being recorded; and the security of the bond and mortgage were not lessened by the omission, except so far as the acts of the assignor might tend to impair or endanger it. The assignee had a right to repose upon the integrity of the assignor not to do any act to defeat the security; and it certainly can never lie in his breast to say, that the assignee of the mortgage should have protected himself against the subsequent acts of the assignor by recording the assignment. Hence, the defendants cannot avail themselves of any imputable carelessness or remissness of the complainant in this respect in order

18

1831.

FERRIS
v.
HENDRICK-
SON.

October 31.

to rid their estate from liability to make restitution, if, by any act of their testator, the liability has been incurred.

In the absence of all intentional fraud on his part, it is insisted, that he did not become liable to make good any portion of the complainant's loss. I can perceive no difference, however, as to the rights of an injured party, whether a man intends to act fraudulently or suffers himself to be the victim of the fraud of others, if, by his act, a loss or injury is sustained. In a moral point of view there is a great difference, but the injury is the same and requires equal reparation, so far as human laws are concerned; and this too, whether the act proceeds from a premeditated design to do wrong or from carelessness or ignorance of the consequences. If a man will permit himself to be the dupe of others and voluntarily do an unauthorized act or one which he had no right to perform, and by which an innocent person suffers, there can be no reason why he should not make good the loss to the injured party. Arguing in this way, I think the present case resolves itself into the question, whether, after the assignment to the complainant, the assignor had any right to interfere with or control the effect of the mortgage without the knowledge or consent of the assignee?

It is said, in the first place, the mortgage was paid off and satisfied to Williamson by Foster and not by the complainant: and, therefore, it had become *functus officio*, was no longer a subsisting security, and, consequently, Williamson might lawfully cancel it of record. This brings up the question of fact before alluded to.

The weight of evidence, as to the course of the transaction, is, in my judgment, decidedly in favor of the complainant; and it appears to me, that the facts proved by the defendants, from which their version of it might be inferred, may be very easily reconciled with the more positive proof on the part of the complainants and with the state of facts which such proof presents.

But, from the view which I have taken of the case, it appears to me not material which way the matter is considered. And even taking the transaction to be as represented by the defendants, I think there is enough to entitle the complainant to the relief he seeks. He took the assignment indubitably for the

purpose of keeping the mortgage alive as a subsisting lien upon the property and, as is expressed on the face of the instrument, to stand as a security to the complainant for moneys loaned to Foster.   This was not only in accordance with Foster's previous agreement, but by and with his subsequent concurrence, exemplified by his attestation as a subscribing witness; and it must be taken for granted that Rem Williamson, the mortgagee, was made acquainted with their arrangement and understood the object so to be when he executed the assignment. There is no pretence but that it was read and fully explained to him.   His son, Stephen B. Williamson, who afterwards succeeded to his estate and became his executor, lived with his father at the time and was present when the assignment was executed and became a subscribing witness to it.   He must be presumed to have acquired an understanding of what his father was doing; and he was capable of advising him against a wrong act, had he discovered one.

They, then, knew or ought to have known that the mortgagee parted with all his interest in and power over the mortgage and that the complainant, by virtue of the assignment, became the beneficial owner of it as a subsisting mortgage and was vested with all the rights and attributes which belonged to a mortgagee.   The original mortgagee could not lawfully afterwards exercise any act over the mortgage without the consent of the substituted owner.   He, however, takes it upon himself, in about a fortnight afterwards, to certify that it was paid off and discharged, and thereby—and without the knowledge or consent of the complainant—it was cancelled of record; and the complainant deprived of the benefit of the security.

Admitting both parties to have been equally innocent: which ought to bear the loss?   Upon every principle of justice and equity, he whose act was the occasion of it.

Various other points were raised upon the argument on the part of the defendants, which I have considered; but none of them appears to be sustained.   It is unnecessary to notice them further, since I am satisfied the interference of Rem William-

son, from whatever motive, in discharging the mortgage after the assignment to the complainant, was an unauthorized and improper act and has produced the loss of so much of the complainant's debt as that mortgage covered and which it was intended collaterally to secure. As a plain matter of equity the complainant is entitled to be reimbursed the amount of such loss out of the estate of Rem Williamson.

There must be an order of reference to compute the amount of principal and interest, unless the parties can agree upon it; and I must decree, that the moneys paid into court in the original cause be applied to the payment of such amount—with costs to the complainant to be taxed.