GEORGE PUTNAM, JR., administrator, *vs.* JOHN H. COLLAMORE.

Suffolk. Nov. 18, 1875. — June 30, 1876. COLT & LORD, JJ., absent.

A., the equitable owner of certain real estate held in trust for him, and to be conveyed, if the trust should not be revoked in his lifetime, to the trustee named in his will for the benefit of his wife and children, took assignments to himself, and to a third person for his benefit, of certain mortgages to which the property was subject, and which it was his duty to pay as the equitable owner of the property. The trust was not revoked in his lifetime, and by his will he devised all the property held in trust for him to B. in trust for the benefit of his wife and children. *Held*, that the mortgages had been extinguished by the assignments to A., and that his administrator with the will annexed properly refused to charge himself with the mortgages in the Probate Court.

APPEAL by John H. Collamore from a decree of the judge of probate, allowing the account of George Putnam, Jr., the administrator *de bonis non*, with the will annexed, of George W. Col-

lamore, the ground of appeal being that the administrator should have charged himself in his account with three mortgages on a certain parcel of land in Richmond Street, Boston.

At the hearing in this court, before *Wells*, J., the question, whether the administrator should so have charged himself, was reserved for the full court on a statement of facts, the material parts of which appear in the opinion.

*C. A. Welch*, for the appellant.

*W. G. Russell & G. Putnam, Jr.*, for the appellee.

ENDICOTT, J.   The transactions recited in this report are somewhat complicated, and a condensed statement of the facts, in the order of their occurrence, will render the case more intelligible.

In March, 1853, Elias W. Goddard, as the agent and for the benefit of George W. Collamore, the testator, purchased of David A. Dunbar an estate on Richmond Street and took a deed in his own name.   The estate was then subject to a mortgage for $1000, given by a former owner to Willard W. Stevens. This mortgage was recited in the deed of Dunbar to Goddard, with an express stipulation that it should be assumed and paid by Goddard, as part of the consideration named in the deed. Goddard gave back a mortgage to Dunbar in the sum of $3000. Fifteen hundred dollars was also paid by Goddard to Dunbar, which sum was furnished by Collamore and was the purchase money of the estate over and above the two mortgages.   Of the $1500 so furnished by Collamore, $900 was obtained from Daniel Copeland, for which Collamore gave his note to Copeland, which was secured by a third mortgage on the estate given by Goddard to Copeland at the request of Collamore.   Collamore went at once into possession of the estate, and took the rents and profits until his death; and after his death they were received and accounted for by the trustee under his will.   In November, 1853, Collamore paid the amount of the note secured by the first mortgage, and the mortgage was assigned to him by Stevens; and in June, 1854, he paid $900 to Copeland, and the third mortgage was assigned to him.   He never recorded either of the assignments.   The second mortgage, on which Collamore had paid $500, was assigned by Dunbar to Francis S. Carruth in March, 1855.

*v*

On June 7, 1856, Goddard conveyed the estate, subject to the three mortgages, by deed to Charles J. Hubbard; and on the same day Hubbard reconveyed to Goddard, in trust for the uses and purposes set forth in Goddard's declaration of trust of even date. This declaration of trust is lost. Goddard, in a subsequent conveyance to John A. Andrew, recites that he made such a declaration, and that he covenanted therein that, if Collamore died without revoking the trust, he would convey the estate to such person as Collamore should appoint by his last will, as trustee of his estate, for the use and benefit of his wife and children, upon request by such trustee in writing.

Carruth in March, 1860, assigned the second mortgage, upon which $2500 was then due, to John A. Andrew, who took it at the request of Collamore, who furnished the purchase money. At this time Collamore was the equitable owner of other real estate, the legal title of which was held by Andrew.

In 1860, therefore, Goddard held the equity of redemption, in trust for Collamore, to convey it, if not revoked by Collamore in his lifetime, to the trustee named in Collamore's last will, for the use and benefit of his wife and children. The first and third mortgages had been assigned to Collamore. The second mortgage stood in the name of Andrew in trust for Collamore, who had paid the money.

Collamore died in August, 1862, leaving a will, which was dated June 11, 1856, in which Andrew was named as executor and trustee, and he was duly appointed. After providing for the payment of his debts and giving authority to his executor to sell such parts of his real estate as may be necessary for that purpose, he gives the rest and residue as follows: " All the rest, residue and remainder of my estate of every kind and description, legal and equitable, including as well the property and estate now held in trust for my use and benefit by John A. Andrew, and all other property and estate which I may have, or to which I may have any title legal or equitable at the time of my decease, whether held in my name or in trust for my benefit, and the disposition of which I may have the right to control by my last will and testament, or by any other writing in the nature thereof, I give, devise and bequeath to John A. Andrew, but upon the trusts, uses and purposes following." The trusts

named are mainly for the benefit of his wife and children. It is to be noticed that the will is dated but four days after the declaration of trust made by Goddard, June 7, 1856.

Goddard in February, 1866, upon the request of Andrew, conveyed the estate in Richmond Street to Andrew to hold upon the trusts declared in the will in relation to the rest and residue of Collamore's estate. In this conveyance Goddard recites the declaration of trust made by him June 7, 1856, and declares that the trust was not revoked by Collamore in his lifetime. The inventory, returned by Andrew, includes this real estate " as conveyed to Goddard in trust for Collamore;" but the mortgages were not included as assets of the testator in the inventory or account rendered by Andrew, or in the accounts rendered by the appellee, who was appointed administrator *de bonis non* upon the decease of Andrew.

The only question reported for decision and argued at the bar is whether the administrator *de bonis non* should have charged himself, in the account rendered by him, with these mortgages. We are of opinion that he should not, and that the judgment of the Probate Court must be affirmed.

The administrator can have no greater rights than his testator. Could Collamore then, at the time of his death, have enforced the payment of these notes from Goddard; or in default of payment, could he have foreclosed the mortgages as against Goddard, who then held the estate upon a trust revocable at Collamore's pleasure during life?

Collamore had advanced all the money paid for the purchase of the estate, and had paid all the notes secured by mortgages on the premises, and there were no incumbrances on the property, unless the two mortgages assigned directly to him, and the one assigned to Andrew for his benefit, can be treated as such.

The report expressly finds that, in making the purchase and in executing the mortgages, Goddard acted as the agent of Collamore, for his benefit and under his direction. Collamore at once went into possession and took the rents and profits. The subsequent declaration of trust, taken in connection with these facts, shows that Collamore was the equitable owner throughout the transaction.

In the deed of Dunbar to Goddard it was provided that Goddard should pay the Stevens mortgage. As Collamore was the equitable owner, this obligation on the part of Goddard was binding on Collamore, and it was his duty to meet it. If en-- forced against Goddard, as in *Braman* v. *Dowse*, 12 Cush. 227, Collamore would have been obliged to protect Goddard, who was acting as his agent. If Goddard had paid it and taken an assignment, the mortgage would have been discharged under the authority of *Brown* v. *Lapham*, 3 Cush. 551; for if the money is paid by one whose duty it is by contract or otherwise to pay the mortgage, it is a release, though in form it purports to be an assignment. The legal effect of a payment depends upon the relations between the parties and their relative duties. *Gibson* v. *Crehore*, 3 Pick. 475. *Kilborn* v. *Robbins*, 8 Allen, 466. *McCabe* v. *Swap*, 14 Allen, 188.

The effect of the assignment of the Stevens mortgage to Collamore was to extinguish it, as the duty of paying it was upon Collamore by reason of the obligation assumed by Goddard acting for him and as his agent. Nor does it appear that Collamore had any intention of keeping the mortgage alive, and no intention to do so can be gathered from the facts presented. The form of the assignment does not in itself show such intention, and the failure to record it, if entitled to any weight, would tend to rebut such a presumption. But his intention becomes immaterial, as it was his duty to pay, and the mortgage is discharged, whatever may have been his intention or the form of the conveyance from the mortgagee.

The same result must follow as to the second and third mortgages. They were made by Goddard, while acting as agent, at the instance of Collamore, and for his convenience and benefit. The debts they secured it was the duty of Collamore to pay. By paying them and causing one mortgage to be assigned to himself, and the other to Andrew for his benefit, the mortgages were extinguished.

Other objections are urged against these two mortgages by the appellee. But we have not considered them, as the ground previously stated is sufficient for the decision.

*Decree affirmed.*