EDWARD R. HUXLEY v. HARVEY A. RICE AND FRANCIS KING.

*Purchaser on foreclosure made trustee for the benefit of a prior grantee whose rights should have been protected.*

Contracting parties must not act in bad faith to third persons who are in such relations to either as to be affected by their agreement or its consequences.

A transaction that is in fraud of one's rights may be construed in equity so as to be a means of saving and protecting them.

Where a conveyance is obtained for fraudulent ends or under oppressive circumstances, the party deriving title is converted into a trustee, if necessary for administering relief.

One who has sold mortgaged land with warranty and has covenanted to pay off the mortgage, cannot make title in himself as against his grantee by allowing foreclosure and redeeming the land.

K sold to H a parcel out of a lot which he had mortgaged and then allowed the mortgage to be foreclosed upon the whole lot, and by a collusive arrangement with R in his own interest but in fraud of H's rights, the lot was bid in by R, who then refused to release to H except upon terms. *Held* that R should be considered as holding H's parcel as trustee for H's benefit, and so far as H was concerned, as K's mortgagee.

Appeal from Kent. Submitted November 1, 1878. Decided January 14, 1879.

BILL TO REMOVE CLOUD from title. Rice appealed.

*J. W. & O. C. Ransom* for complainant and appellee. Defendants are estopped from asserting title, 1 Greenl. Ev., §§ 22–26, 207 et seq., *Pickard v. Sears*, 6 Ad. & El., 469; Smith's Lead. Cas., 479; *Converse v. Blumrich*, 14 Mich., 109; *Voorhees v. Olmstead*, 3 Hun, 744; *Linsley v. Sinclair*, 24 Mich., 381. Parol evidence is admissible in cases of fraud, accident and mistake to show that a conveyance absolute on its face was meant to be a mortgage, 2 Story's Eq. Jur., § 1018; 4 Kent's Com., § 58; *Vernon v. Bethell*, 2 Eden, 110; *Marks v. Pell*, 1 Johns. Ch., 594; *Emerson v. Atwater*, 7 Mich., 12; *Wadsworth v. Loranger*, Har. Ch., 113; *Fuller v. Parrish*, 3 Mich.,

211; *Swetland v. Swetland*, 3 Mich., 487; *Barnard v. Jennison*, 27 Mich., 230. The equity of redemption cannot be separated from a mortgage, even by express agreement of the parties, *Seton v. Slade*, 7 Ves., 273; *Newcomb v. Bonham*, 1 Vern., 232; *Holridge v. Gillespie*, 2 Johns. Ch., 34; *Cortelyou v. Lansing*, 2 Cai., 209.

*Henry B. Fallass* for defendant and appellant. If mortgaged lands are sold in the wrong order, a court of equity will on proper showing give a party aggrieved a sale in the right order, but it must be in the same suit (Barb. Ch. Pr., 540; *Brown v. Frost*, 10 Paige, 245; *Requa v. Rea*, 2 Paige, 339; *Collier v. Whipple*, 13 Wend., 224) and not in one by original bill, *Nicholl v. Nicholl*, 8 Paige, 349; *Am. Ins. Co. v. Oakley*, 9 Paige, 259; *Mott v. Walkley*, 3 Edw. Ch., 590; *Libby v. Rosekrans*, 55 Barb., 220; *March v. Ludlum*, 3 Sandf. Ch., 51. To raise an estoppel the wrong must be coupled with an injury that is the legal result of it, 2 Smith's Lead. Cas., 715; *Casey v. Inloes*, 1 Gill., 439; *Traun v. Keiffer*, 31 Ala., 136; *Newman v. Edwards*, 34 Penn. St., 32; *Forsyth v. Day*, 46 Me., 197; *Cummings v. Webster*, 43 Me., 192; *Taylor v. Zepp*, 14 Mo., 482; *Alexander v. Walter*, 8 Gill., 239. An estoppel *in pais* applies only to rights existing at the time of the act creating it, Bigelow on Estoppel, 438, 471; *Donaldson v. Hibner*, 55 Mo., 492; *Dillett v. Kemble*, 10 C. E. Green, 66; *Langdon v. Doud*, 10 Allen, 433; *White v. Ashton*, 51 N. Y., 280. When a grant for a valuable consideration shall be made to one person and the consideration be paid by another, no trust shall result in favor of the person by whom the payment is made, but the title shall vest in the person named as alienee in the conveyance (*Taylor v. Boardman*, 24 Mich., 302; *Weare v. Linnell*, 29 Mich., 225; *Hooker v. Axford*, 33 Mich., 457; *Garfield v. Hatmaker*, 15 N. Y., 478; *Norton v. Stone*, 8 Paige, 225; Comp. L., § 4120) except as against judgment creditors, id., § 4121; *Maynard v. Hoskins*, 9 Mich., 488; *Trask v. Green*, 9 Mich., 358; *Tyler v. Peatt*, 30

Mich., 63; *Brewster v. Power*, 10 Paige, 563. Where the defendant, at plaintiff's request, verbally agreed to attend a foreclosure sale of plaintiff's farm, bid it in, take a deed in his own name and let plaintiff repay the amount of the bid and have a reconveyance, it was held that the agreement was within the statute of frauds and would not support an action (*Lathrop v. Hoyt*, 7 Barb., 59; *Hall v. Shultz*, 4 Johns., 240; *Van Alstine v. Wimple*, 5 Cow., 162; *Bartlett v. Pickersgill*, 4 East, 577, n.; *Hughes v. Moore*, 7 Cr., 176; *Getman v. Getman*, 1 Barb. Ch., 499; *Steere v. Steere*, 5 Johns. Ch., 11; *Movan v. Hays*, 1 Johns. Ch., 339; *Kisler v. Kisler*, 2 Watts, 323; *Williard v. Williard*, 56 Penn. St., 119; *Botsford v. Burr*, 2 Johns. Ch.. 404; *Woodhull v. Osborne*, 2 Edw. Ch., 614; 2 Story's Eq. Jur., § 1201 a; Browne Stat. of Frauds, § 90; Perry on Trusts, §§ 134, 135), even if the agent was afterward convicted of perjury in denying the trust, Sugd. on Vendors, 438; *The King v. Boston*, 4 East, 572.

GRAVES, J.    July 29, 1868, one Joseph W. Amphlett and wife and the defendant King and wife made their mortgage to one Jared P. Dodge for $1,000 payable in one year with interest at ten per cent. upon premises in the village of Lowell in Kent county, and being a parcel of land one hundred feet in width east and west and eight rods in length north and south, and bounded on the east by Water street and on the south by Bridge street. And subsequently, as may be inferred, the defendant King became vested with whatever interest belonged to Amphlett.

March 25, 1872, King and wife conveyed to complainant for an expressed consideration of $800 a strip twenty-two feet wide east and west and running from Bridge street to the north line of said parcel and lying forty feet west of Water street.

The deed contained the usual covenants of seizin, warranty and against encumbrance, and also provided

specifically that King should pay the Dodge mortgage, and was duly recorded in September of the same year.

To secure $650 of the purchase price complainant gave his notes to King together with his mortgage on the parcel purchased. The papers were of even date with the deed and provided that $50 should be paid in six months; $200 in one year; $200 in two years, and the residue of $200 in three years, and that there should be annual interest at ten per cent. on all sums unpaid.

King further conveyed another parcel adjoining on the west and of the same shape and size to one Eli Cummings.

The original parcel mortgaged to Dodge was therefore divided after that mortgage into different holdings by these conveyances, and more than half in quantity and in value three times the amount of the mortgage being retained by King. The several holdings had buildings and they were occupied either by the proprietors or their tenants.

The record shows Rice to be a man of means, and that before and during the transactions relative to this case he dealt in money, made loans, bought paper and handled securities in his neighborhood about Lowell.

The case imports that he had become liable on a note given for King's benefit to the Lowell National Bank for $2,000, and on the 3d of February, 1873, in order to secure himself, had taken from King an assignment of three mortgages, and one of which was the foregoing given by complainant to King.

At the time of the foreclosure and sale hereafter mentioned on the Dodge mortgage, some $400 remained unpaid on the mortgage given by complainant to King and held by Rice, and the latter claims that there remained unpaid on the note to the bank on which he was liable between fifteen and sixteen hundred dollars.

It further appears that complainant on the 2d of October, 1871, sold to Rice a note given in May preced-

ing by M. & J. C. Hiler for $186.46 with interest at ten per cent. and having over two months to run, and guaranteed the payment, and that Rice held this note at the time of such foreclosure. It is not shown that the securities, or any of them so held by Rice, were uncollectable.

King became embarrassed and unable to meet his engagements.

In this state of things, and in June, 1873, Dodge proceeded to foreclose his mortgage in chancery, and brought the mortgagors and Huxley in as defendants. No notice seems to have been taken of the cutting up of the premises subsequent to the mortgage. The complainant as well as the other defendants in the case omitted to appear, and the bill was taken as confessed, and on the 5th of September, 1873, a final decree for foreclosure and sale was entered, and on the 2d day of July, 1874, the entire premises were sold in one body to Rice for $1,570.50, that being sufficient to satisfy the mortgage and all costs, and he received the commissioner's deed accordingly.

At that time the portion of the premises which King had not disposed of was worth double the amount obtained on the sale of the whole, and Rice was well acquainted with the situation of the property and was aware of complainant's equities.

He knew that King was legally and equitably bound to guard complainant against the Dodge mortgage, and that according to the principles of equity, recourse ought to be had to the premises remaining in King before resorting to the lot held by complainant, and he also knew that as assignee of the subsequent mortgage given by complainant on the twenty-two feet strip he was entitled to insist upon the application of this doctrine, and by means of which complainant's rights would be saved without prejudice to the lawful interests of any one.

July, 1875, Huxley filed this bill against King and Rice to compel the latter to relinquish to him the

apparent title made by the commissioner's deed to the strip he bought of King, and for general relief.

The bill claims that defendants fraudulently combined to keep him from taking steps in the foreclosure suit to protect his interest and fraudulently professed to him and caused him to believe that they had made arrangements between themselves by which Rice would guard or provide for guarding the premises of complainant against the Dodge mortgage, and that he, complainant, believed such professions and accordingly omitted to take measures to protect his interests.   And it further claims in substance and effect that Rice's purchase was not an unqualified purchase made in good faith in his own right, but one made for the joint benefit of himself and King in bad faith to overreach the rights of complainant and deprive him of his property, and he insists he is entitled to claim that the effect of the course pursued and proceedings taken was to extinguish the lien of the Dodge mortgage on his, complainant's, parcel.

King made no defense, but Rice answered, and the record shows that the parties went into evidence at much length.

The court decreed that the defendants should release to complainant the parcel he had purchased, but without prejudice to the lien of the mortgage given on it to King and held by Rice.   Rice appealed.

The evidence in the record is voluminous and discordant, and it would be useless to attempt to harmonize it.   An attentive consideration of it has led to certain conclusions, and a brief reference to them is all that is necessary here.   Any general discussion would be quite unprofitable.

According to the clear weight of evidence the defendants a short time prior to the foreclosure sale and after some negotiations, entered into an oral agreement by which Rice was to provide the means and bid off in one body the entire premises covered by the Dodge mortgage,

and take conveyance from the commissioner in his own name and immediately release to Cummings his separate parcel, and likewise release to complainant his portion upon his payment of his purchase money mortgage in Rice's hands; and that Rice should receive by way of interest on the sum advanced to bid off the property, certain rents issuing out of that portion King had not deeded, and amounting to four dollars per week, and moreover on being repaid the sum bid, should release to King the residue of the premises, and it was expected, and the defendants proceeded on the assumption, that no more would be required to bid in the property than the amount of the mortgage debt and costs, and that King would be able to repay the principal sum advanced at an early day and perhaps within a year, whilst the rents set apart for Rice would be equal to about twelve and a half per cent. a year on his advance. Rice was to give King a paper in the nature of a defeasance. This is the distinct showing by King and his son.

Complainant was not informed of this arrangement and gave no assent to it. It was a transaction between King, his grantor, who was bound to guard him against the Dodge mortgage, and Rice, the assignee of his mortgage, who was at least entitled to claim that the other premises should be first sold, and was made behind his back, and it provided that his premises, together with King's share, which was worth more than double the amount of the debt and costs, should be passed into the hands of Rice, and that the latter should have the right to hold complainant's parcel until the latter should pay the entire amount called for by his mortgage, and that too when one-half of the amount remaining on that mortgage was not due and would not be for more than eight months.

It is true complainant's testimony in certain particulars, and which would be of vital importance if the case depended on the theory to which they relate, disagrees with the testimony given by King; but it is equally true

that when fairly examined the most of complainant's testimony is quite capable of reconciliation with the fact of the making of this agreement by King and Rice. Indeed the tendency of it is to favor, and most decidedly, this explanation, and the obvious inferences and implications point in the same direction.

Rice stands pretty much alone and his version is repugnant in terms to this explanation. He insists it was expressly understood that if he intermeddled at all he would bid and buy for himself to advance his own interests exclusively, and would hold the entire premises as his absolute property, and that all concerned quietly acquiesced. At the same time he admits an oral agreement with King, made about three weeks after the purchase, to sell the property to him, and he also admits that prior to his purchase words passed between them to the effect that a bargain to resell might be made after the purchase should be consummated. The account given by Rice is not so reasonable as the other. It does not so well harmonize with unquestionable facts and with ruling probabilities. When the day of sale arrived King took Rice to the place in his buggy, and on reaching there, and as though the business was already fully agreed upon and understood between them, Rice at once, and in King's presence, and without his saying a word, took the whole property in a lump for the sum claimed on the mortgage and the costs of foreclosure, and King paid Rice's expenses and the fee for recording the commissioner's deed to Rice and the parties returned to Lowell together. It is needless to repeat Rice's explanation of these matters. It fails to satisfy us.

No attempt was made to interfere with the possession, and Rice contented himself with the receipt of the four dollars per week in rents. After some time, however, he demanded possession and claimed that he owned the property absolutely and in his own right; that he bought it to protect his own interests, but that as matter of favor he would resell to King on being paid the pur-

chase price, the demand held by the bank and whatever King owed him; and that he would sell to complainant his parcel and release him from his guaranty on the Hiler note and from all claim for rents subsequent to the commissioner's deed and give up the purchase money mortgage if complainant would pay him eight hundred dollars. He refused to give King any defeasance or other evidence of right. In fine he repudiated the arrangement under which he took the title in his name and set up new and very exorbitant conditions.

The case suggests several grounds of equity which will not be noticed.

The first thing which may be referred to is the bearing of the oral agreement entered into by King and Rice. Whatever may have been the conscious motives of defendants, it is plain the arrangement was a fraud against complainant. It was an "imposition" and a violation of the rule of justice which requires that "persons shall not only transact *bona fide* between themselves, but shall not transact *mala fide* in respect of other persons who stand in such a relation to either as to be affected by the contract or the consequence of it." *Chesterfield v. Janssen*, 2 Ves. Sen., 156, 157, per Lord Hardwick; *Ferris v. Hendrickson*, 1 Edw. Ch., 132; *Denison v. Gibson*, 24 Mich., 187.

It was King's duty to complainant to protect him against the Dodge mortgage at that time and at all times, and it was a gross violation of that duty and a fraud to adopt a scheme to place him in a situation where his protection would depend on the humor or honesty of another, or on the terms of his paying another debt, whether due or not due, and it was a fraud in Rice, with his knowledge of the state of facts, to enter into the arrangement, and especially as he was holder of the mortgage the complainant gave to King, and in a position to call for the sale of the other premises first. *Upham v. Brooks*, 2 Woodb. & M., 407.

40 MICH.—11.

The transaction being one in fraud of complainant's rights, may be so construed in equity as to be a means of saving and protecting his rights. *Laing v. McKee*, 13 Mich., 124; *Wilson v. Eggleston*, 27 Mich., 257.

It is the settled doctrine of the court that where a conveyance is obtained for ends which it regards as fraudulent or under circumstances it considers as fraudulent or oppressive by instant or immediate consequence, the party deriving title under it will be converted into a trustee, in case that construction is needful for the purpose of administering adequate relief; and the setting up the statute against frauds by the party guilty of the fraud or misconduct in order to bar the court from effective interference with his wrong-doing, will not hinder it from forcing on his conscience this character as a means to baffle his injustice or its effects. Comp. L., §§ 4692, 4693; 1 Story Eq. Jur., §§ 330, 333; 2 id., §§ 1254, 1265; 1 Spence's Eq. Jur., 511; 2 id., 194, 294, et seq.; Hill on Trustees, 144; *Mestaer v. Gillespie*, 11 Ves., 621; *Pickett v. Loggon*, 14 Ves., 215, 234; *Barnesly v. Powel*, 1 Ves. Sen., 284, 289; *Young v. Peachy*, 2 Atk., 254, 257; *Brown v. Lynch*, 1 Paige, 147; *Hutchins v. Lee*, 1 Atk., 447; *Wolford v. Herrington*, 74 Penn. St., 311; *Gregory v. Williams*, 3 Meriv., 582. The evidence in the record brings the conveyance Rice received from the commissioner within this doctrine, and is sufficient to authorize the court to consider Rice as holding the parcel in question for complainant's benefit and subject only to the mortgage the latter gave to King.

But there is another view. The transaction between King and Rice when consummated by the commissioner's deed operated as regards them in equity so as to create a trust in Rice in the nature of a mortgage with a right of redemption in King. King was borrower and Rice lender. The actual purchase was by the former and the latter took the title in his own name to secure himself for his advance. At the same time it was part of his trust to release to Cummings and complainant, and the

circumstance that defendants assumed to make it part of their agreement that Rice should be required to release to complainant only on being paid the mortgage from the latter to King, makes no difference in this respect. The inherent nature of the transaction between defendants was not changed,—King was borrower and buyer and Rice lender and trustee, with the rights of mortgagee. *Ryan v. Dox,* 34 N. Y., 307; *Case v. Carroll,* 35 N. Y., 385; *Anderson v. Lemon,* 4 Seld., 236; *Levy v. Brush,* 45 N. Y., 589; *Stoddard v. Whiting,* 46 N. Y., 627; *Carr v. Carr,* 52 N. Y., 251; *Brown v. Lynch,* supra; *Wolford v. Herrington,* supra; *Wilson v. Giddings,* 28 Ohio St., 554; *Emerson v. Atwater,* 7 Mich., 12; *Russell v. Southard,* 12 How., 139; *Peugh v. Davis,* 96 U. S., 332; *Matthews v. Sheehan,* 69 N. Y., 585; *Wilcox v. Morris,* 1 Murphey (N. C.), 116.

The fact that as between Rice and King the transaction was intrinsically of this nature is important. Because it could not be allowed to operate against complainant in a fictitious character without his assent. Considering the real circumstances, his position entitles him to insist that neither of the defendants shall gain or he lose on account of their giving a false character to the transaction, and his right to claim this must remain just the same whether the court in a controversy between the defendants would or would not allow either to avail himself of the exact oral arrangement made, as against the other. Now, the defendants were not at arms-length, but in concert and privity, and Rice was in truth buying for King and taking conveyance in his own name for security. He was not an independent operator with King standing by as a mere spectator unconnected with his proceeding. As matter of fact the purchase was King's purchase, and in equity it worked an extinguishment of the lien of the Dodge mortgage as against complainant and left an apparent title in Rice with the right in complainant to be vested with it. As regards the latter the Dodge mortgage was in construction of equity redeemed or paid by

King through Rice. This is manifest, since King could not make title in himself against complainant under the Dodge mortgage in the face of his own grant and covenant obligations against that mortgage. *Putnam v. Collamore*, 120 Mass., 454; *Upham v. Brooks*, supra. Rice appears to have infringed different equities. He has refused to give any defeasance or to recognize even any right whatever either in King or complainant, and claims the entire premises as his absolute property. He insists that no trust can be fastened on him, and that no objection to his claim of absolute ownership can be substantiated by oral proof, and that he is in a position to take advantage of King and complainant and require them to pay his outside demands against them of whatever nature and amount as a condition precedent to any return or admission of their interests. This course of proceeding is sufficient to call the justice of the court into activity.

Such is the case as we see it in the record, and by the showing there made we are bound. Had there been nothing more than a bidding in of the premises under an oral arrangement that it should be in King's interest and for his benefit, there would be occasion for other considerations on particular points.

The decree must be affirmed with costs.

The other Justices concurred.