# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed February 7, 1899.

ALEXANDER L. GOINS, ET AL.,

VS.

JAMES S. DAVIS, ET AL.

*Lewis Hochheimer* and *W. Frank Tucker* for plaintiffs.

*G. W. H. Craig* and *Harry C. Mathieu* for defendants.

STOCKBRIDGE, J.—

On the 10th of November, 1897, Macadonia Immediate Relief Society No. 2, was a voluntary, unincorporated beneficial society. It had on deposit in the Savings Bank of Baltimore about $266. James S. Davis, one of the defendants in this case, was the President of the Society, and the plaintiffs, Alexander L. Goins, Martha A. Lewis and Lizzie Hammond, were the banking committee.

The purpose of the society, as far as can be gathered from the constitution and by-laws, was to defray or contribute towards the expense of the burial of its members, or afford pecuniary relief to those who were sick. Just what the routine or method for the withdrawal of the society's money from bank should have been to meet payments consonant with the purpose of its existence is not clear from the by-laws. Article 3 of the constitution requires the president to "sign all orders drawn by the treasurer in case of sickness or decease of members, or in other cases when requested by a majority of the members present."

Article 4 imposes a duty upon the secretary of signing all orders drawn on the treasurer.

Article 5 requires the treasurer to pay all orders drawn by the financial secretary and signed by the president, and inhibits him from making any payments except on an order signed by the president.

Article 7 defines the duties of the banking committee, which were "to deposit in bank and draw therefrom all moneys entrusted to them for that purpose," but whether withdrawals were to be made as the result of orders signed by the president or secretary or by the treasurer, or by all three, or as the result of an action taken by the society, nowhere clearly appears.

About the 10th of November, 1897, there seems to have been some trepidation among certain of the officers of this society, by reason of an anticipated attempt upon the part of Mrs. West to enforce the payment of certain benefits claimed by her from the society, and accordingly the president, Mr. Davis, and all of the banking committee met at the savings bank and withdrew nearly all of the money on deposit for the supposed purpose of redepositing it in some other bank. There is some conflict of testimony as to whether this withdrawal was first suggested by Mr Goins or Mr. Davis, but there is none whatever that Mr. Davis, as president, notified the two female members of the banking committee, Lewis and Hammond, to meet at the bank for the purpose of the withdrawal of the fund. When they did meet there, Davis certainly assented to, if he did not actually direct the withdrawal: the necessary vouchers was signed by the members of the committee, and the money received from the bank. The money was not redeposited in another bank, but, instead, was divided, the president, Davis, receiving $130 and the chairman of the banking committee, Goins, $129 and some cents.

At the next meeting of the society following this withdrawal, these facts, or a portion of them, seem to have come to the knowledge of the society, and to have been the occasion of a

serious disturbance at the meeting, in which the president was assaulted, and no meeting of the society has been held since that time.

Subsequently the money which had been paid to or left in Goins' hands at the time of the division, was re-deposited in a bank by the banking committee, but the defendant Davis has not refunded the money retained by him, or any portion of it, and the present bill filed by the banking committee to compel him to do so. At the time of the filing of the bill an allegation was incorporated in it to the effect that Mr. Craig, the solicitor for the other defendant, had received the money from his client, and he was therefore made a party defendant, and a discovery was asked by the bill, as to the whereabouts of the money. The evidence in the case, however, as conceded by the plaintiffs at the hearing, does not sufficiently connect Mr. Craig with the money in question to make him in any manner chargeable with it, and therefore as to him the bill must be dismissed.

Vague, indefinite and unsatisfactory as are the provisions of the constitution and by-laws with respect to the money of this society, there can be no doubt that the fund in bank was wrongfully withdrawn, and that both the plaintiffs, as banking committee, and the president of the society, Davis, were guilty of a breach of their duty when they united in or connived at such withdrawal. The parties entitled to the money were the members of the society as a whole, not any one or more officers, and in the absence alike of direct authority from the society, and of a general authority under the constitution and by-laws, neither any officer or committee had any right to touch this fund: but when they did take the fund and withdraw it, by that very act the plaintiffs, as banking committee, and Davis, as the president, (who was on hand, sanctioned the wrongful act, and himself received a part of the money); constituted themselves trustees ex male-ficio. This doctrine is clearly laid down by Lord Chancellor Selborne in the leading case of Barnes vs. Addy, 9 Chan. Ap. 244, when he says: "that responsibility (i. e. of trustees) may no

doubt be extended in equity to others who are not properly trustees if they are found either making themselves trustees de son tort, or actually participating in any fraudulent conduct of the trustee to the injury of the cestui que trust.

But on the other hand strangers are not to be made constructive trustees merely because they act as agent of trustees in transactions within their legal powers, transactions perhaps of which a Court of Equity may disapprove, unless those agents receive and become chargeable with some part of the trust property, or unless they assist with knowledge in a dishonest and fraudulent design on the part of the trustees."

The doctrine thus laid down was no new one in England, but was fully declared by Lord Ellenborough, in the case of Taylor against Plummer, 3 Maule & Selwyn 574, and has been repeatedly followed since. The same doctrine has been frequently recognized in this country, as in the case of Huxley vs. Rice, 40 Mich. 82, and the principle is declared in Pomroy's Equity Jurisprudence, Sec. 1053, in these words: "Whenever the legal title to property is obtained through means or under circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust upon the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a Court of Equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder until a purchaser of it, and in good faith and without notice, acquired a higher right and takes the property relieved from the trust," and this language has been adopted as the law by the Supreme Court of the United States in Moore vs. Crawford, 130 U. S. 128, and supplemented by Chief Justice Fuller with these words: "The person accepting with knowledge. is to be treated as a party to the fraud, and as profiting by it, or as a mere volunteer assisting him to perpetrate the fraud, and to profit by it, and is, hence, to be held as a trustee, *ex maleficio*." It is thus

clear that as to the money received by Mr. Davis from the banking committee, or some of them, money which belonged to the Macadonia Society, when he received it he became a trustee for that amount, and the sole question is, have these plaintiffs, who, as banking committee, were active parties in the original wrong-doing, any standing whatever to prosecute this case as against their co-wrongdoer? As already pointed out, when the money was drawn the banking committee, no less than the president, became trustees of the society, and as between the banking committee and the president, they were co-trustees. When, now, the banking committee re-funded and re-deposited the money retained by Goins, they partially atoned for their own wrongful act, and, though cases of this character have not been frequent, it has been distinctly held, upon two occasions, that a trustee who has been concerned, or has concurred in the breach of a trust, may take proceedings against his co-trustee to follow and recover the trust property.

Carson vs. Sloane, 13 L. R. Ireland, 129.

Price vs. Blakemore, 6 Beaven, 507.

Counsel for the defendant urged at the hearing that defendant was entitled to offset as against this demand certain claims of his, the defendant's. Davis'. With regard to these, no method was pointed out by which the Court could obtain any jurisdiction for such allowance; that is a matter which must be regulated entirely within the society itself, and a decree will, therefore, be passed against the defendant, Davis, for the money so wrongfully withheld by him, together with the interest thereon.

The prayer of the bill also asks that the defendant, Davis, be required to deliver up the bank book of the society. This prayer cannot, however, be granted, for the reason that, under the provisions of the constitution, the president of the society is made the proper custodian of such book, and there is no allegation in the bill, or proof taken, to show but what Mr. Davis is still the president of the Macadonia Immediate Relief Society No. 2, and therefore, until he is legally succeeded in the office of president, he is entitled to and it is his duty to retain possession of the bank book.