Minas Kochigian } 
vs. }
Boghos Kulagian, alias, } Eq. No. 11937.
et al. }

October 11, 1933.

CHURCHILL, J. Heard on bill, answer and proof.

The bill prays for cancellation of a mortgage on certain real estate and that a foreclosure sale be declared null and void, and for other relief.

The case was lengthy, the evidence taking a wide range and embracing all the transactions between the parties involved. Even an outline of the testimony advanced on the one side and on the other would extend this rescript beyond any reasonable limit, therefore the Court confines itself to a finding of facts as follows:

On August 17, 1925, Karnig Kulijian took title to the property involved, the deed reciting that it was subject to two mortgages of which the grantor assumed payment.

On July 26, 1927, a mortgage for $800 was placed on the property, the Rhode Island Discount Corporation being the mortgagee. This is the mortgage around which the controversy revolves.

On July 26, 1927, the Citizens Savings Bank took a mortgage on the same parcel for $800. In the mortgage given to the Rhode Island Discount Corporation it was agreed that the mortgage of the Citizens Savings Bank should be given priority in recording. Both mortgages were recorded on July 26, 1927.

October 5, 1927, Karnig Kulijian conveyed a half interest in the premises to his brother Hagop, this deed reciting that the property was subject to two mortgages, whereas, in fact, it was at that particular time burdened with three mortgages of record, none of which had been paid.

August 3, 1928, Hagop Kulijian, at the instance of his brother Karnig and in pursuance of an agreement between Karnig and the complainant, to whom Karnig was at that time indebted, transferred his half interest to the complainant, who agreed with Karnig to forgive the debt owed him by Karnig, and Karnig agreed to pay the principal and interest on two of the mortgages on the property. The complainant did not search the records, relying on the assurance of Karnig that there were only two mortgages on the property. The conveyance under which the complainant took title contained the recital that the premises were subject to two mortgages. At that time there were three mortgages of record and unpaid, but as a matter of fact the complainant did not know of the existence of the third mortgage. The property had on it a house divided into several tenements and the complainant went into possession of an upper tenement and from time to time thereafter made some repairs and paid the taxes.

Having already conveyed a half interest to Hagop Kulijian and having taken part in the transaction in which Hagop had conveyed his half interest to the complainant, Karnig Kulijian then executed, on February 18, 1930, and delivered a deed to his son Bogos Kulijian without any consideration being paid therefor. This deed conveyed the whole interest in the premises to Bogos. Parenthetically, it may be said that the entirely unconvincing and somewhat ignominious reason given by the respondents for the transaction is that Karnig wished to prevent the woman whom he intended to marry from obtaining a dower interest in the property.

Under this deed Bogos Kulijian assumed payment of two mortgages and a life estate was reserved to the grantor, who also covenanted that he was seized in fee simple of the premises.

March 29, 1928, the Rhode Island Discount Corporation assigned its mortgage to the Providence Mortgage Corporation, and on December 5, 1932, Bogos Kulijian paid to that corporation $313 then due on the third mortgage

note and received a document in the form of an assignment and transfer of the mortgage.

On December 31, 1932, Bogos Kulijian, purporting to act under the power of sale in the mortgage which he had received under the document of transfer, sold the premises at public auction, bidding them in for $100, and on January 3, 1933, executed the usual mortgagee's deed to himself.

The complainant at no time had any actual knowledge of the existence of this third mortgage for $800 so foreclosed and had no actual knowledge of the foreclosure sale or of any of the proceedings therein until after the sale had been carried through.

From the salient facts so found by me, the conclusion is unescapable that transactions beginning with the transfer to Bogos Kulijian and ending with the foreclosure sale and the execution of the deed under the power of sale in the mortgage were in pursuance of a scheme, to which both Karnig and Bogos Kulijian were parties, to deprive the complainant of his half interest in the property.

Some comment is necessary at this point on the testimony of the respondents. One element in the case throws a strong light on its reliability. When it became apparent during the trial that there was a serious question as to whether Bogos Kulijian was not estopped by the covenants of his ancestor in title, Karnig, to claim that the mortgage ran against the interest of the complainant, Bogos Kulijian was put forward in a determined attempt to show that he took no title under the deed from Karnig for the reason that the deed was never delivered.

Without reviewing the testimony on this point or adverting to the inconsistencies involved in this attempt to escape the estoppel, it is sufficient to refer to the allegations in the answer drawn at a time before the matter of

the estoppel had been raised. The answer alleged, in paragraph 8 thereof, that "at the time the said respondent Karnig Kulijian deeded his share in said property to the other respondent, Bogos Kulijian, he only did that which he had a legal right to do and the respondent Bogos Kulijian, after receiving the deed referred to, conveying one-half interest in said estate, at the termination of a life estate, did purchase the mortgage referred to and did foreclose the same * * *."

Further comment is unnecessary except to say that at the time of the hearing the Court was of the opinion that the testimony of the respondents was generally untrustworthy, and further reflection and a reading of the testimony has confirmed the opinion formed at the hearing.

Under the facts found, it is clear that Bogos Kulijian must be held to have extinguished the mortgage when he paid the Providence Mortgage Corporation the sum of $313.

> *Tillinghast* vs. *Fry*, 1 R. I. 53;
> *Putnam* vs. *Collamore*, 120 Mass. 454.

In any event, Bogos Kulijian is estopped from setting up his title under the foreclosure proceedings against the half interest of the complainant, since he is bound by the grantor's covenant in the deed to Hagop Kulijian that there were only two mortgages on the property.

> *Hodges* vs. *Goodspeed*, 20 R. I. 537.

The finding that the deed from Karnig Kulijian to Bogos Kulijian, the payment of the third mortgage, and the subsequent foreclosure were in pursuance of a scheme to deprive the complainant of his interest renders the foreclosure null and void against the one-half interest of the complainant.

The complainant is entitled to the relief prayed for in his bill.

For complainant: Knauer & Fowler.

For respondent: Sarkis K. Boyagian.