CHANCERY.

## Adams *vs* Kable and Pusey *vs* Adams.

*Case* 78.

APPEAL FROM THE MEADE CIRCUIT.

*Partners and partnership. Fraud.*

*April* 18.

JUDGE BRECK delivered the opinion of the Court.

The case stated. ADAMS & KABLE being joint owners of a tract of land in the county of Meade, verbally agreed to erect a saw mill thereon in partnership. The mill was erected under the direction and superintendance of Adams, who was a mill-wright, in 1834 and 1835. In 1836 Adams exhibited his bill in chancery against Kable, claiming a large sum for his labor and expenses incurred in the erection of said mill. He also claims a balance due him upon the settlement of a partnership between him and Kable in the tanning business in Virginia. He prays for a settlement and a dissolution of the partnership in regard to the land and mill, and also for a decree for the balance due him upon the former partnership. He prays for a division of the land, and if that cannot be done, then for a sale.

Kable answers, denies the claim of Adams to the extent set up by him ; alleges that he had himself advanced

a large sum for the erection of said mill; that the balance claimed by Adams in regard to the partnership in the Tanning buisiness, had been settled; that Adams had been in the exclusive possession of the mill and tract of land, enjoying all the profits, of which he had failed to render any account. He made his answer a cross bill and prayed for and obtained an injunction against two Judgments, which Adams had obtained against him and also an injunction restraining him from the further prose-cution of an action of assumpsit then pending against him in the name of Adams.

The injunction was subsequently discharged, and Adams, in virtue of executions, which issued upon the Judgments, purchased Kable's moiety of the land and mill for between $200 and $300, being greatly less than its value. The sale was made in 1838. In 1839 and before the time expired, within which Kable had a right to redeem his interest in the land and mill, he sold and conveyed his half of the same to Pusey, who shortly after-wards exhibited his bill against Adams & Kable, setting up his purchase, and alleging that he had been requested by Adams to make it, charging him with fraud in the purchase made by him under the execution and that the requisite sum for the redemption of Kable's interest within the time allowed by law, had been paid by Kable to the Clerk, as directed by Adams. He prays to be let in possession with Adams, if Kable is entitled to a moiety of the premises, otherwise for a rescission of his purchase from Kable, and for general relief. The two suits were consolidated, and Kable, about this time, having depart-ed this life, his administrator and heirs were made parties.

The cases were heard together, and relief decreed Pu-sey and the representatives of Kable, against Adams' purchase under execution. In adjusting the various trans-actions and accounts between Kable and Adams, the Court found a balance against Adams of $205 48½, which was decreed to Pusey. The whole tract of land and mill were directed to be sold, and out of the proceeds the sum decreed to Pusey against Adams, was first to be paid, and the residue equally divided between Adams and Pusey, and that each party pay his own costs.

One partner holding the exclusive possession of partnership estate, and refusing to admit the other partner, is in equity, responsible to his partner or his vendee, for the value of the use of the thing so withheld.

From that decree Adams has appealed to this Court. It is insisted that the Court erred in the adjustment of the accounts and differences between Adams and Kable. In answer to this objection, it is only necessary to say, that a careful examination of the record has entirely satisfied us that no injustice has been done Adams in this respect. He had refused to let Pusey into possession of the land and mill after his purchase, or to let in any person under Kable. Under such circumstances, it was equitable and proper to hold him responsible for one half the rents to Kable's representatives and Pusey. The sum with which he is charged, is fully sustained by the testimony. Nor has Adams any right to complain that the balance of $205 48½ remaining after settling all matters between him and Kable's representatives, should be decreed to Pusey. He was entitled to one half the rents after his purchase. We are, moreover, of opinion that there was no impropriety in settling the individual as well as the partnership transactions between the parties. It would have been more consonant with a correct chancery practice, and would have imposed much less labor upon the Court, to have appointed an Auditor to settle the accounts, but as it is so clearly manifest that no injustice has been done Adams as to the balance decreed against him, we think the decree, on that ground, ought not to be disturbed.

It is also urged that the Court erred in decreeing Kable's representatives and Pusey, relief against the purchase of Kable's interest in the land and mill by Adams, under his executions. We are satisfied that there was an understanding between Adams and the agent of Kable, to refer the matters in controversy between them in the suit of Adams, and in the cross suit of Kable, in which an injunction had been awarded him, to arbitration. In view of that arrangement, we think it was unfair and fraudulent in Adams to proceed immediately and procure a discharge of Kable's injunction, without notice to either Kable, who was absent in Virginia, or his agent, that the agreement of reference had been abandoned; and to sue out executions, sell and purchase his partner's interest,

before he or his agent had notice that the injunction had been discharged.

Even upon this ground alone, it would be unconscientious for him to hold the property. But there are other grounds upon which the decree in this behalf is sustained.

It is in proof that he authorized Kable to pay the requisite sum for the redemption of the land, to the Clerk of the Court, and that he so paid it within the year, and that shortly afterwards, the Clerk tendered the money to Adams, who refused to receive it. As further evidence of the unfairness of Adams, and of his effort to avoid the reception of the money from Kable, it is in evidence that he left home on the last day on which the law authorized the payment or tender, for the avowed purpose of being out of the way, so as to prevent a tender; that Kable was, by arrangement, to pay him on that day, and was at his house for that purpose. A Court of Equity will not permit a party to obtain an unconscientous advantage by acts thus deceptious and fraudulent. But this branch of the case may rest alone upon the payment in due time, of the requisite sum, to the Clerk, by the express direction of Adams. It is contended that Adams ought not to be charged for rent for the year following Adams' purchase, and before the redemption by Cable. It is true Adams was, during that time, in possession, but we cannot sanction the doctrine that he was entitled to the rent as well as the interest, which the statute imposes in case of redemption, and which, in this case, was paid.

But if any doubt could exist upon this point, the circumstances under which Adams made the purchase forbid his exoneration for the rents. But it is further insisted that it was erroneous to decree a sale of the land and mill. Adams prays for a division, if it can be made, if not, for a sale. Kable consented to the sale, and having sold and conveyed the premises to Pusey, his heirs have no right and they do not object; nor does Pusey. He prays to be let into possession, and for such decree as may do complete justice between the parties. Unless it is apparent, therefore, that an equitable division of the premises could be made, it seems to us that Adams has

*Margin note:* A purchaser agreed with the owner of property sold under a decree, to permit a redemption by payment of the purchase money by a particular day, but the purchaser left home to avoid the payment, the owner or his vendee paid the money into the Clerk's office as agreed on by the purchaser and defendant; the Chancellor permitted a redemption.

Doe, &c.
vs
Jones.

no right to complain of the decree in directing a sale. The mill appears to be a very valuable appurtenant to the premises. It does not appear that there is more than one dwelling house upon the premises, suitable for a tenant or occupant. The mill and the house would be indivisible for practical possession and enjoyment. Adams indicates no inclination to take a portion of the land without the mill or the house; nor does he attempt to show that an equitable or satisfactory division could be made. Under all the circumstances, we are of opinion the objection to the decree in directing a sale, ought not to be rendered available by Adams. Lastly, it is insisted that time should have been given Adams for the payment of the sum decreed against him in favor of Pusey. If the Court had not decreed a sale and division, it would have been proper to have given day, but if, as we have seen, Adams ought not to complain of the sale and division, it will be very apparent that it cannot operate to his prejudice that the amount which is decreed Pusey, should be discharged out of the proceeds of the sale of the whole premises.

Upon the whole, we perceive no error to the prejudice of Adams, and the decree is, therefore, affirmed.

*Morehead & Reed* for appellant: *B. Hardin* for appellees.

---

Trespass.

Case 79.

April 20.

The case stated.