JOHN TROTTER

*v.*

BASIL B. SMITH *et al.*

1. BILL TO REDEEM—*where a judgment debtor has been induced to let the statutory period for redemption expire.* A judgment debtor, whose land had been sold under execution, was induced to allow the time prescribed by the statute for him to redeem, to pass without making redemption, on the promise of another that he would aid him in redeeming after the twelve months expired, through a judgment creditor. Accordingly, before the time for redemption by a judgment creditor had expired, the debtor confessed a judgment in favor of the party thus promising to aid him, and of another, an attorney at law, who had advised the same course, for the purpose of such redemption, and these judgment creditors redeemed the

promise from the original sale, and the attorney, having purchased the interest of the other, obtained a sheriff's deed, and refused to permit the debtor to redeem from him: *Held*, upon bill filed for that purpose, the debtor, under the circumstances, was entitled to redeem from the party who had thus acquired the title. Having lost his right to redeem under the statute by reason of the promise of assistance, the party making that promise could not be allowed to disappoint the expectation he had created in the debtor's mind that the redemption should be for his benefit.

2. ATTORNEY AND CLIENT. Nor could the attorney, who had participated in the redemption, and finally obtained the title, stand in any different attitude towards the debtor, for while he made no promise of aid in respect to a redemption by a judgment creditor, he advised the debtor, when consulted by him on the subject, not to redeem as a judgment debtor, but to make redemption after the twelve months, in the other mode. The relation of the attorney, in that capacity, to the transaction, would prevent him from holding the land as against his client.

3. Moreover, if it had been agreed between the debtor and the attorney that the latter should retain the land under his redemption, such an agreement would not be binding upon the client. The land was worth nearly four times the amount required to make the redemption, and under such circumstances so unreasonable a contract between an attorney and his client will not be sustained.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

Messrs. WILLARD & JONES, for the plaintiff in error.

Mr. M. SCHÆFFER, for the defendants in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill to redeem, brought by Trotter against Smith and Gaines, and dismissed by the circuit court on the final hearing. The record discloses the following state of facts:

In January, 1868, Trotter bought the land in controversy. It was subject to a mortgage in favor of one Yandes, which was foreclosed at the March term, 1868, and in May, 1868, it was sold under the decree and bought by Yandes for $844.37.

At the August term, 1868, Trotter's wife obtained a decree of divorce, and also a decree for alimony for $1100, of which

the sum of $100 was to be paid January 1st, 1869, and the sum of $1000 January 1st, 1870.

Trotter having failed to redeem the land within twelve months after the sale under the decree of foreclosure, one Dickens, to whom the decree for alimony had been assigned, redeemed as a judgment creditor, and, at the sale under his execution, purchased the property for the amount paid by him to redeem, and the $100 of alimony then due.

On the last day of the sixty days allowed for a second redemption, Trotter confessed a judgment for $100 in favor of Smith and Gaines, by virtue of which they redeemed the land, and no further redemption being made, at the expiration of sixty days, Smith, who had bought the interest of Gaines, received a sheriff's deed. Smith paid Gaines the money advanced by him to redeem, and $125 in addition thereto. In the December following, Smith demanded possession of the land, and Trotter asked to be permitted to redeem. Smith refused this, and brought an action to recover the possession, and Trotter filed his bill in this suit.

The parties themselves were witnesses, and the only witnesses who had any knowledge of the arrangement by which the redemption was effected. Smith is an attorney at law. Trotter swears that before the twelve months after the first sale expired, he consulted Smith on this and other matters, and was advised by him not to redeem within the twelve months, but to confess a judgment and redeem in the ensuing three months through the judgment creditor. He further testifies that Smith offered to act for him in that capacity. Smith, in his testimony, does not deny this statement, and makes no reference to it. The subsequent negotiations in regard to redemption were made between Trotter and Gaines, but this advice, if given by Smith, as stated, tends to show why Trotter permitted the twelve months to expire without redeeming. That he could have raised the money to redeem is proven. The land was worth, as admitted by Smith, from $3500 to $4000. The amount then necessary in order to redeem was less than

$1200, and Trotter was offered $2400 for the land by one person, and $1000 for forty acres of it by another, both of whom testify to their willingness to purchase.

About the time the twelve months expired, Trotter had several conversations with Gaines in regard to redemption. Gaines finally agreed to aid him, and they went to the office of Smith for further advice. Smith then agreed to unite with Gaines in making the redemption, and the judgment was confessed to them jointly for that purpose. Smith and Gaines both testify that it was then fully explained to Trotter that his interest in the land was entirely lost. This is admitted by Trotter, but it is not inconsistent with the residue of his testimony, as he knew his own right to redeem was gone, and that he had permitted it to expire under the advice of Smith, with the expectation of raising the money and redeeming through a judgment creditor. Smith and Gaines, however, further testify that it was agreed between all the parties that the only benefit to be derived by Trotter from the proposed redemption was, that he was to be permitted to gather and remove the corn crop on the land, worth about $250. This is denied by Trotter.

The case is by no means free from doubt, but we are of opinion that all the circumstances require us to permit a redemption, especially as such a decree imposes no loss or hardship upon either party. The business was managed with singular carelessness by Trotter, but the evidence leads us to the conclusion that he was a simple and credulous man, who trusted implicitly to Gaines' professed willingness to aid him. The fact, that he could have sold the land for twice the sum necessary to redeem, is clear, and we can only account for his not doing so by his reliance on the promise of Gaines to redeem for him, and thus enable him to save the farm, which was worth much more than the price offered. He testifies, that Gaines dissuaded him from selling, saying, that he did not wish Wolf, the person desiring to buy, to have the land, and that he would himself redeem. This is denied by Gaines, but as we have just stated, Trotter's conduct can only be

explained by his reliance upon Gaines. Gaines also expressed to others his intention to help Trotter, and the fact that he subsequently sold his interest in the land for a trifling advance, and the further fact that he gave as a reason therefor, to one of the witnesses, that there would be litigation about the property, strengthen the theory that he knew Trotter had acted under the belief that the redemption was to be effected, by Gaines, for his benefit. Admitting that Smith and Gaines are correct in testifying, that when the judgment was finally confessed, Trotter was told he could have no interest in the land besides the corn crop, it was then the last day for redemption, and too late for Gaines to impose new and unreasonable terms, if Trotter had been induced by his promises to let the time pass until it was impossible for him to seek other friends, or adopt other modes of effecting a redemption. We presume, however, the fact to be, not that Gaines intended to deceive Trotter from the beginning, but that, while having no definite plan as to the terms of making the redemption, he created in the mind of Trotter a firm belief that the redemption would be made for the latter's benefit, so as to permit him to re-acquire the title to the land on reasonable terms. This expectation he can not equitably disappoint.

The position of Smith is no stronger than that of Gaines. It is true, he had had no negotiations with Trotter, and had made him no promises. But he had himself, in the first instance, advised Trotter to adopt this mode of redemption, and when he suddenly united with Gaines in becoming a nominal judgment creditor in order to redeem, Trotter had the right to hold him subject to the same equities which would control the title to be acquired by Gaines. He was in a position where he could not be permitted to make an unconscionable bargain for his own benefit. He had acted as Trotter's adviser, and his advice had led to the existing situation. Gaines and Trotter were at that moment consulting him as an attorney. The wise policy of the law, controlling the relation of attorney and client, forbids us to recognize as valid such a

contract as that upon which defendants insist, when made under such circumstances. Smith was under no obligation to redeem on any terms, but choosing to assist Gaines in doing so, he can not take from his client, though only a *quasi* client, land worth nearly four times the money to be advanced, and claim that the transaction was relieved of all objection by the permission to Trotter to remove his crop of corn.

It does not mend the matter to say that Trotter's interest in the land was legally gone, and if Smith and Gaines did not acquire the title for a small fraction of its value, some other person would have done so. It is enough to say that Smith could not thus acquire it. He and Trotter were in no position to deal with each other on equal terms, and under such circumstances it has long been the rule of law, that an unreasonable contract between an attorney and his client will not be sustained.

As already remarked, we have been somewhat perplexed as to the merits of this case, but we have arrived at the conclusion that the decree must be reversed and the cause remanded, with directions to render a decree authorizing Trotter to redeem by paying to Smith the amount of the judgment confessed in favor of Gaines and Smith, with six per cent interest thereon, and the amount of the redemption money paid by them with like interest, and whatever taxes Smith may have paid. On the other hand, Smith will be chargeable with whatever rents and profits he may have received. On the failure to pay this sum within a reasonable time, to be fixed by the court, the land will be sold for that purpose, and the surplus disposed of as the court may direct.

*Decree reversed.*