# Hilton Wilson and others v. Lorenzo Eggleston.

*Fraud: Misrepresentations: Buying up encumbrances.* One who, while holding out inducements to another, whose estate is largely encumbered, that he will furnish means for him to redeem, and thereby prevents him from looking elsewhere, in the meantime purchases such encumbrances himself and cuts off the redemption, is guilty of fraud, and will not be allowed to enforce his advantage.—*Laing v. McKee, 13 Mich., 124,* followed and approved.

*Equity pleading and practice: Remedy: Specific performance.* A bill will not lie in such case to enforce specifically the giving of a loan as proposed, where there was no complete agreement. The remedy is by way of redemption.

*Bill in equity: Specific performance: Dismissal: Decree modified.* A bill should contain allegations of facts and not mere recitals of circumstantial evidence, and should show the theory on which complainant intends to rely. But where a bill making out a strong case of fraud was dismissed as improperly framed for specific performance, the decree below was so modified as to make such dismissal without prejudice.

*Heard May 1 and 2. Decided May 6.*

Appeal in Chancery from Kalamazoo circuit.

*William Fletcher*, for complainants.

*Robert F. Hill* and *Arthur Brown*, for defendant.

CAMPBELL, J.

Complainants filed their bill against defendant to establish certain equities in regard to titles and encumbrances held by him against their real estate.

The circumstances out of which the controversy arose were these: In October, 1872, complainants, having been unfortunate in business, and their property, alleged to be worth fifteen thousand dollars, having been encumbered by several mortgages and execution levies and sales, amounting in all to something more than seven thousand dollars, desired to obtain a single loan on long time to take up all these claims, so as to enable them to resume business in their machine-shop. The redemption on one execution sale would expire as against them on the 26th of December, 1872. There was also a mortgage in process of foreclosure, on which a chancery sale was afterwards had in January, 1873, and other redemptions would run out at later periods.

Early in October application was made to Theodore P. Sheldon, of Kalamazoo, to aid them in obtaining the desired loan, and after some other suggestions, the bill shows that on the 14th day of October he informed complainants that he thought defendant Eggleston would lend them the money, to an amount sufficient to take up all the claims. Sheldon promised to see Eggleston, and inform complainants (or their agent, Mr. Fletcher), what could be done. Meanwhile he impressed it on Mr. Fletcher to keep quiet about the loan, and say nothing to any body about it, as Mr. Eggleston did not wish it known. Fletcher had several interviews with Sheldon, running along about two months, Sheldon constantly urging secrecy, as Mr. Eggleston did not wish it known, but saying he had not yet made up his

mind. In one of these interviews, in the last part of November, Eggleston came into Sheldon's bank while Fletcher was there, and Fletcher requested Sheldon to speak with him about the loan. Sheldon spoke with him apart, and came back and reported that Eggleston had not yet determined to make the loan, but to keep quiet and say nothing about it, as Eggleston did not wish it to become known.

On the 23d of December, 1872, complainants learned that Eggleston had been buying up the liens and claims on the land. On the 28th, one of them (Jonathan Wilson) saw him, and he told Wilson he had purchased various claims, including the one on which the redemption expired on the 26th, and had got them at a discount of eight hundred dollars. The bill sets forth that several of the purchases were made at a discount, and that they were so obtained by inducing a belief that they were being taken up for complainants' benefit. Eggleston is charged to have denied having had any thing to do with Sheldon's representations, or having authorized them.

The bill charges that Eggleston knew that Sheldon was, by his representations of making a loan for Eggleston to complainants, misleading them so that they would not look elsewhere for the money, until after Eggleston had purchased said encumbrances and liens, and a loan from other sources would be unavailing to them; and also that Eggleston countenanced and encouraged Sheldon so to mislead them. It also charges that complainants have been assured by men of means that they would have lent them the money on the proposed security.

The bill further shows proceedings under the various sales, to obtain the property and oust them.

The demurrer is a general demurrer for want of equity; and if there is any thing whatever in the bill which could authorize any equitable relief, the demurrer cannot be sustained. It becomes necessary, therefore, not only to con-

sider its sufficiency as to the special relief prayed, but in other respects.

Its primary purpose is to obtain specific performance of a contract to make the time loan. But this cannot be maintained. There never was any agreement, and, even if one were claimed by way of estoppel, there would be too much uncertainty as to its terms. Moreover, it would involve a question of some importance under the statute of frauds, there having been no performance. The case in this, as well as in some other aspects, has some resemblance to *Taylor v. Boardman, 24 Mich., 287.*

No equity could arise which any court could enforce merely out of Eggleston's purchases at a discount. It is not averred that the securities were sold on any agreement or representation that complainants were to have the benefit of the reduction, and, while the creditors would probably have been more liberal with them than with strangers, yet, unless some stipulation or condition to that effect was expressed or implied in the sales, no trust could arise out of them.

The bill, however, contains distinct charges that complainants were intentionally and fraudulently misled by Sheldon, with the knowledge and co-operation of Eggleston, into abstaining from seeking aid elsewhere, while Eggleston was at the same time getting up the claims that they were endeavoring to raise money to satisfy and remove; and has cut off their equity of redemption. While Sheldon is charged as being most active in the matter, Eggleston is the one who has secured the property, and is, therefore, the only one against whom any trust can be enforced, if it can be done at all; although all who took any part in the alleged conspiracy would be proper defendants.

In its general outlines the case here set up somewhat resembles that of *Laing v. McKee, 13 Mich., 124.* And if the bill contains sufficiently definite allegations, the fraud pointed out is one which, if made out, deserves redress.

WILSON *v.* EGGLESTON.

The bill is so drawn as to set forth a multitude of circumstances which are items of evidence merely, but which, standing alone, are not conclusive; and the allegations of fact, to which the evidence should be applied, are mainly left out. A bill should not set out at length the evidence on which the complainants rely, but should aver the acts of misconduct, and the other facts which, if sustained, would entitle them to relief. In the multitude of details and vague allegations in this bill, we have found but a single distinct allegation out of which an equity could possibly be raised.

But if Eggleston can be charged as having obtained these titles under such circumstances of fraud as to make him responsible, he is only chargeable for setting up claims which, under the circumstances, he should allow complainants to redeem. They have only offered to do this by having their original proposition carried out, that is, by a time loan. But we have already intimated this was not agreed on and cannot be required. If the circumstances are such that he should be compelled to allow a redemption, it can only be on the same footing with other persons holding liens which are redeemable, and which must be redeemed in money within some reasonable time. The bill is not framed on this theory.

It would not be proper to discuss the various inferences that might be drawn had the bill contained more definite allegations. Cases of fraud depend on so many circumstances, and involve so many mutual conditions, that we have no means of anticipating whether, when all the facts shall appear, it will or will not turn out that complainants can have any standing in court. There is enough, however, to make it proper, in affirming the decree dismissing the bill, to do so without prejudice to any future proceedings.

The decree must be affirmed, with costs, but without prejudice.

The other Justices concurred.