# SECURITY STATE BANK OF STRASBURG, NORTH DAKOTA, a Corporation, Respondent, v. FERDINAND KRAMER, Appellant.

(198 N. W. 679.)

**Mortgages — redemption after statutory period permissible, where redemption prevented by fraud of person profiting by failure to redeem.**

1. Where a redemptioner has been prevented from exercising his right to redeem within the statutory period by the fraud of one, who as a result of the failure to redeem, obtains title to the premises, a court of equity has power to set aside the sheriff's deed, and permit a redemption to be made after the expiration of the statutory redemption period.

**Evidence — sufficient to support findings.**

2. In the instant case the trial court found that the plaintiff was prevented from redeeming within the statutory period by fraud and deception on the part of the defendant. For reasons stated in the opinion it is *held* that these findings are in accord with the weight of the evidence.

**Mortgages — second mortgagee held "redemptioner" within statute, notwithstanding defects in signature and acknowledgment of mortgage.**

3. For reasons stated in the opinion it is held that the plaintiff is a redemptioner within the purview of § 7753, Comp. Laws 1913.

**Mortgages — failure to redeem within time allowed in judgment, providing for redemption after statutory period, held not to affect it; first mortgagee, fraudulently preventing second mortgagee from redeeming, held required to satisfy out of redemption money subsequent mortgage placed by him on premises; second mortgagee, on redeeming from first mortgage, held not required to pay for improvements made by holder of latter.**

4. Certain contentions on the part of the defendant to the effect that the plaintiff failed to comply with the provisions of the judgment; that the court erred in making provision for the payment of a mortgage which the defendant had given on the premises after a sheriff's deed had been issued to him; and that defendant was entitled to be compensated for certain improvements made by him on the premises, considered, and, for reasons stated in the opinion, held not well founded.

---

Note.—(1) Power of court on equitable grounds to permit redemption from. mortgage foreclosure sale after expiration of statutory period of exemption, see note in L.R.A.1917E, 637; 19 R. C. L. 652; 3 R. C. L. Supp. 964.

(5) Discretion of court as to grant or refusal of motion for new trial, see 20 R. C. L. 290; 3 R. C. L. Supp. 1051; 4 R. C. L. Supp. 1351; 5 R. C. L. Supp. 1096.

**New trial — motion for new trial addressed to sound judicial discretion of trial court, appellate court will not interfere unless an abuse of judicial discretion is shown; in this case no abuse of discretion shown.**

5. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the trial court, and the appellate court will not interfere unless an abuse of judicial discretion is shown. In the instant case it is held that no abuse of discretion has been shown.

Opinion filed March 26, 1924.   Rehearing denied May 3, 1924.

Appeal and Error, 4 C. J. § 2817 p. 835 n. 67.  Equity, 21 C. J. § 82 p. 107 n. 76 New.  Mortgages, 27 Cyc. pp. 1812 n. 6; 1848 n. 76; 1858 n. 84 New; 1862 n. 24 New, 25.  New Trial, 29 Cyc. pp. 883 n. 87; 886 n. 5; 899 n. 56; 956 n. 48, 53; 994 n. 57, 58; 1009 n. 54.  Redemptioner, 34 Cyc. p. 767 n. 35.

Appeal from the District Court of Morton County, *Berry,* J.

Defendant appeals from a judgment and from the order denying a motion for a new trial.

Affirmed.

*Jacobsen & Murray,* for appellant.

"Unless he relied upon it in good faith, and was influenced or lulled thereby into not redeeming within the year, he cannot now bring the letter into the case claiming that he relied upon it at that time.  The reliance upon it must have been actual and in good faith from the time of receiving it.  The burden is upon him to prove that fact.  In view of these facts and the exceedingly general language of the letter, and the time when made, and that the letter did not unequivocally refer to accepting payment after the year, we are convinced that redemption should not be allowed, as there is no right shown thereto by that clear and convincing evidence required in this class of cases.

"There is no dispute as to the legal principles applicable.  There is no claim of a contract right of redemption.  The only claim is that the plaintiff was led to forego a redemption within the year by the statement or promise contained in the letter which he relied on, and that the defendant is therefore estopped from now denying that right. As in all equitable actions of a similar character, the right to redeem as against a deed would not be upheld except on evidence of a clear and convincing nature.  Measured by that standard, the showing in this case fails.  Granting a redemption on the value, unsatisfactory and

contradictory evidence in the record would expressly jeopardize titles by deeds, and render them of no practical value, although based on regular, satisfactory proceedings." Kenmare Hard Coal, Brick & Tile Co. v. Riley (N. D.) 126 N. W. 241.

"A second mortgagee relying on what an attorney casually told him and on what the plaintiff's attorney said to the effect that he had eighteen months from the date of the sale in which to redeem did not learn to the contrary until about a month before the expiration of such eighteen months, when he tendered a sum sufficient to make the purchase entirely whole, and was granted permission to redeem. Held, that, although he acted in good faith, and with reasonable promptness, the court erred in thus permitting redemption out of time." Mayer v. Alexander (Kan.) 201 Pac. 859.

"Before a court of equity is justified in extending the time of redemption on a statutory foreclosure for fraudulent conduct inducing the owner to refrain from redeeming, equitable grounds must clearly appear; and fraud is not to be lightly presumed, but must be clearly proved." Palmer v. Palmer (Mich.) 160 N. W. 404.

"The right to redeem from a foreclosure at law is a legal right created by the statute, and can neither be enlarged nor abridged by courts upon some motion of general equities." Wood v. Button (Mich.) 172 N. W. 422.

"The owner to effect redemption need not file with the register of deeds nor serve upon the sheriff any written notice of redemption, as must be done where redemption is made by a redemptioner as distinguished from a mortgagor or owner of the equity of redemption." Stiles v. Dickey, 22 N. D. 515.

The law is well settled that before officers of a corporation can mortgage the corporate property they must be given power to do so by the corporation, and in the absence of such power the mortgage is void. See 14a C. J. 461, 462, 464, §§ 2318, 2319; Blood v. La Serene Land & Water Co. (Cal.) 45 Pac. 252; Alta Silver Min. Co. v. Alta Silver Min. Co. (Cal.) 21 Pac. 373; Clearwater County State Bank v. Bagley Ogema Teleph. Co. (Minn.) 133 N. W. 90; 191 Fed. 633; 208 Fed. 393.

*Norton & Kelsch,* for respondent.

Appellate courts will not decide or pass upon purely abstract or moot

question. Farmers Supply Co. v. Jacobsen, 47 N. D. 223; Tubbs v. Sather, 29 N. D. 84; Thompson v. Vold, 38 N. D. 569; Appeal & Error, 3 C. J. p. 358.

Where the appellant procures no stay of execution and does not appeal and file a supersedeas bond and the respondent fully complies with the judgment of the court the questions of fact and law presented by an appeal subsequently perfected become moot. Tubbs v. Sather, 29 N. D. 84; Thompson v. Vold, 38 N. D. 569; Farmers Supply Co. v. Jacobsen, 47 N. D. 223.

The appellate court may receive proof or take notice of facts appearing outside of the record for the purpose of determining the moot character of the question presented. Appeal & Error, 3 C. J. p. 360, Authorities cited under notes 87.

A party who accept the benefit of a judgment or decree cannot afterwards maintain and appeal to review the same or deny the authority which granted it. Appeal & Error, 3 C. J. p. 679, Authorities cited under notes 21 thereto.

1. The findings of fact made by the trial court are presumed to be correct and sustained by sufficient competent evidence. The burden rests upon the party alleging error of demonstrating its existence. The party must be able to show to the Supreme Court that such findings of fact are clearly and unquestionably opposed to the preponderance of the evidence. Ruettell v. Insurance Co. 16 N. D. 546.

2. The supreme court will not disturb the findings of the trial court based upon conflicting evidence particularly where the credibility of the witness is involved. Dodson v. Crocker, 20 S. D. 312, 105 N. W. 929; Watt v. Aylward, 34 S. D. 248, 147 N. W. 978.

3. The findings of fact of the trial court made in passing upon questions of fact as to which there is a decided conflict are entitled to a careful consideration by the supreme court. Northern Trading Co. v. Drexel State Bank, 37 N. D. 521.

4. The findings of fact of the trial court will not be reversed upon appeal if there is substantial evidence in the record to sustain them. State v. Banks, 24 N. D. 21.

5. The trial judge who had the opportunity to observe the demeanor of the witnesses on the stand while under oath, who could note their candor or want of candor and willingness with which they testified;

their interest and apparent frankness and truthfulness was in a better position to pass upon the credibility of the witnesses and the weight to be given to their testimony than the appellate court who has only the abstract record from which to determine such facts. Northern Trading Co. v. Drexel State Bank, 37 N. D. 530.

6. The appellant assigning error must present a record affirmatively showing such error. A mere color of error is not sufficient, but every reasonable intendment establishing the regularity of the decision rendered must be removed, as all doubtful interpretations will be resolved in favor of the validity of the action of the trial court. Erickson v. Wiper, 33 N. D. 193; Raad v. Grant, 43 N. D. 546.

Courts have held with great unanimity that the purchaser and holder of the sheriff's certificate is estopped to insist upon the statutory time notwithstanding that such promises and assurances were not in writing and were made without consideration upon the ground that the redemptioner was lulled into a false security. Shreder v. Young, 161 U. S. 334–344, 40 L. ed. 721–726, 16 Sup. Ct. Rep. 512.

The power of courts of equity to give relief in certain class of cases, and permit a redemption of real estate sold under execution after the statutory period of redemption has expired, has been generally recognized, and such power has been exercised when a proper state of facts required it. (See Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012.)

The power of courts of equity to give relief to cases where redemption was not made by reason of fraud, deception or false promise has not only been generally recognized but has unhesitatingly exercised whenever a proper state of facts require such relief. Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 102.

Courts of equity will permit an owner or redemptioner to set aside a sheriff's deed obtained as a result of any fraud or deception practiced upon him by the purchaser. Wade v. Major, 36 N. D. 338, 35 L.R.A. (N.S.) 1139.

Forfeitures are odious and courts struggle against them. Equity will grant relief from forfeitures where the refusal to grant such relief will work hardships or injustice. 2 Pom. Eq. Jur. 833.

The plaintiff had a right to in good faith believe that the officers of its mortgagor were duly authorized to execute the mortgage in ques-

tion, and was not bound to look beyond the mortgage which shows on its face that it was the corporate act of the mortgagor.   14 C. J. 462, § 2319.

Where a corporation obtains a loan on its note secured by its mortgage which appears to have been executed upon behalf of the corporation by its officers and where such receives the benefit from such transaction, such corporation is estopped from asserting the defense that the execution and delivery was not in fact authorized by its board of directors in accordance with its by-laws or the statutes.   36 L.R.A. (N.S.) 1132, 133 N. W. 91.

That where a party comes into a court of chancery seeking equity, he is bound to do justice, and not ask the court to become the instrument of inequity.   Equity will not aid avarice in purloining property. Easton v. Lockhart, 10 N. D. 193.

CHRISTIANSON, J.   This is an action to set aside a sheriff's deed issued upon the foreclosure of a real estate mortgage, and to redeem the premises described in the mortgage from such foreclosure.   The trial court rendered judgment in favor of the plaintiff cancelling the sheriff's deed and permitting such redemption.   The defendant moved for a new trial.   The principal ground of such motion was newly discovered evidence.   The motion was denied, and the defendant has appealed from the judgment and from the order denying a new trial.   On the appeal from the judgment a trial de novo in this court is demanded.

The material facts are as follows: The defendant Kramer was originally the owner of the lands in controversy.   The lands contained certain lignite coal deposits.   In January 1919, the defendant and his wife entered into a contract with a corporation known as the Consolidated Lignite Collieries Company, whereby they agreed to sell the lands in question to said Collieries Company for the sum of $35, per acre in money, and $15, per acre in stock in such company.   In such contract it was provided that $10,000 of the purchase price should be paid in cash on or before January 2d, 1920, and that the balance of the purchase price should be paid by notes to be executed by said company to the defendant, and secured by a first mortgage on the premises. In order to raise the $10,000 so stipulated to be paid to the defendant the said Consolidated Lignite Collieries Company, arranged with the

plaintiff bank for a loan. Said plaintiff bank agreed to loan said collieries company $10,000, and take a second mortgage on the premises as security therefor. That is, it was understood between said collieries company and the bank that the collieries company was to be permitted to execute a first mortgage to the defendant to secure the balance of the purchase price to him after the payment of the said $10,000. The undisputed evidence is to the effect that the plaintiff made the loan and turned the $10,000 over to the president and secretary of the collieries company, and that on or about January 2d, 1920, the said collieries company paid such moneys to the said defendant and executed to him notes in the sum of $9,277, due in five years with interest at 6 per cent per annum, and a mortgage upon the premises to secure payment of said notes. At the same time the defendant and his wife executed and delivered a warranty deed conveying the premises to the collieries company, reserving, however, to the defendant and his wife the right to use the surface of the land, without in any manner conflicting with the mining operations, and the right to use and occupy the farm buildings on the premises for such time as the defendant might desire, but in no event for a period longer than the life of the defendant and his wife. The deed and the mortgages to the plaintiff bank and the mortgage to the defendant were all duly recorded in the office of the register of deeds of Morton county wherein the lands were situated. Default was made in the conditions of the mortgage owned by the defendant and he thereupon caused his mortgage to be foreclosed by advertisement and the premises were duly sold pursuant to said foreclosure sale on July 9th, 1921, at which time they were struck off and sold to the defendant for the aggregate sum of $10,079, and a sheriff's certificate of sale was issued to him in evidence of such sale, which certificate was filed for record in the office of the register of deeds of the county on July 23d, 1921. On July 7th, 1922, one Henne, the cashier of the plaintiff bank and one Baumgartner, a director and president thereof and one Jacob Berreth came to defendant's premises and a certain conversation was then had between them. It appears that these three parties were also interested in the coal Collieries Company. It further appears that the defendant was interested in such company by reason of his stock holdings and at one time was a director therein and for a time had charge of the mining operations. The questions involved in

this law suit depend primarily upon what occurred and what was said on July 7th, 1922.

The trial court made the following findings, as regards what occurred during said conversation:—"That the said Ferdinand Kramer on the arrival of the said Henn, Baumgartner and Berreth at his home, greeted them first outside of his house; that Kramer stated to the parties that he was surprised that they had come out to New Salem so soon and that he did not expect them to be out there until the next week to attend to the business on which they had come.

"That on meeting Kramer outside of his house on the morning of July 7th, 1922, on the premises herein before described, the said J. P. Henn, cashier of the plaintiff bank, stated to Kramer that he had come there for the purpose of making redemption of the land which the Security State Bank of Strasburg held a mortgage on and which had been sold under foreclosure sale under the mortgage given on said land by the said Consolidated Lignite Collieries Company to Ferdinand Kramer; that there was talk between the parties in regard to redeeming the property from the foreclosure sale, and that the defendant, Kramer, then invited the said three men into the house; that there was further conversation in the house between the parties in regard to the redemption of the said premises from the said mortgage foreclosure sale.

"That the said J. P. Henn, J. J. Baumgartner and Jacob Berreth remained at the Kramer home on the morning of July 7th, 1922, for about two hours; that while there they had negotiations with the defendant, Ferdinand Kramer, pertaining to the purchase by Kramer of the mortgage on the premises held by the plaintiff bank; that during the conversation had on said day between Ferdinand Kramer and the said J. P. Henn, J. J. Baumgartner and Jacob Berreth, Kramer stated that they need be in no hurry to redeem and that he wished to make arrangements to purchase the mortgage held by the plaintiff, the Security State Bank of Strasburg on the premises, and that he thought the time for redemption did not expire until July 18, 1922; that neither the said J. P. Henn, J. J. Baumgartner nor Jacob Berreth knew exactly when the time for redemption from the Kramer mortgage expired, and that Henn and Baumgartner thought the time did not expire for at least a week after July 7th; that the said J. P. Henn,

J. J. Baumgartner, and Jacob Berreth believed and relied upon the statement of Kramer that the time for redemption did not expire until July 18, 1922.

"That an oral agreement was finally entered into between Jacob Berreth, J. J. Baumgartner and J. P. Henn and Ferdinand Kramer that Ferdinand Kramer was to purchase the second mortgage held on the premises by the Security State Bank of Strasburg, North Dakota, for the sum of $9,000; that said oral agreement was entered into by Ferdinand Kramer with J. J. Baumgartner and Jacob Berreth and J. P. Henn, representing the plaintiff bank, while all of said parties were at the home of the defendant on July 7th, 1922.

"That the defendant Ferdinand Kramer on Monday, July 10, or Tuesday July 11, would meet Messrs. Henn, Baumgartner and Berreth at Bismarck, North Dakota, and would at said time and place take up the second mortgage on said premises held by the plaintiff by making payment of $9,000, for said second mortgage and interest to the plaintiff bank, and would obtain the money therefor by borrowing the same from Jacob Berreth, who agreed to loan the money to the defendant for this purpose, and that the defendant to secure the payment of the said $9,000, to Jacob Berreth would execute and deliver at said time to Jacob Berreth his note for $9,000, bearing interest at six per cent per annum and payable in three or five years, and would secure the payment of said note by a first mortgage on all the premises hereinbefore described in paragraph 2 of these findings of fact.

"That pursuant to the foregoing agreement made with the defendant, Ferdinand Kramer, at New Salem, North Dakota, on July 7, 1922, the said Mr. Henn, Mr. Berreth and Mr. Baumgartner proceeded in their automobile to return to their homes in Emmons County, North Dakota; that before leaving the Kramer premises the defendant Kramer promised to telephone to one of the parties before the following Monday and advise them as to whether he would meet them at Bismarck, North Dakota, on the Monday following or on the Tuesday following; that the said Henn, Berreth and Baumgartner left the premises of the defendant Kramer on July 7, 1922, fully believing and relying upon his promise and agreement to purchase the mortgage held by the plaintiff bank, and fully believing and relying upon the statements and representations of the said Kramer that in any event the

plaintiff bank would have until July 18, 1922, to redeem from the said foreclosure sale.

"That on July 7, 1922, J. P. Henn, agent of the plaintiff, was misled by the statements and representations then and there made by the defendant Kramer and was deceived thereby into believing that the defendant Kramer would purchase the said second mortgage of the plaintiff, and that in any event the plaintiff would have the full right to make redemption of the premises described in paragraph 2 of these findings from the foreclosure of the said Kramer mortgage until July 18, 1922, and that had not the said agent of the plaintiff been so misled and deceived the plaintiff by its said agent, J. P. Henn, would have on July 7, 1922, made redemption of the said premises from said mortgage foreclosure sale."

The court further found, "that on Saturday, July 8, 1922, at about 3 o'clock P. M., Mr. Houser of New Salem, North Dakota, who was employed as a bookkeeper by the defendant Kramer, at the direction of the defendant Kramer telephoned to J. P. Henn at Strasburg, North Dakota, and stated to him that Kramer had changed his mind in regard to purchasing and taking over the second mortgage held by the Security State Bank of Strasburg, North Dakota, and that he would not carry out his agreement to purchase said mortgage; that thereafter, as soon as he could do so, the said J. P. Henn got in communication over the telephone with Jacob Berreth and with J. J. Baumgartner and informed them of the information he had received over the telephone from Mr. Houser."

Thereafter on July 12th, 1922, Henn, Baumgartner and Berreth again went to see the defendant in regard to the matter discussed in the first conversation. The defendant Kramer at this time refused to purchase the mortgage or accept the money due on his certificate of sale and referred them to his attorney. It is undisputed that at this time Henn, the cashier of the plaintiff bank, offered to redeem the property and pay defendant the full amount due on the certificate of sale, but that Kramer refused to accept. The evidence further shows that formal tender was made of the amount due and that subsequently a deposit was made thereof in the manner provided by law for making deposit.

The trial court found that the representations and promises made

by the defendant Kramer on July 7th, 1922 "were made by the defendant for the purpose of misleading the plaintiff, and without any intent of keeping the same, and for the purpose of inducing the plaintiff to defer its redemption of said premises from said mortgage foreclosure sale, and to alter its position and to put it out of its power to redeem said land from said mortgage foreclosure, to the end that the defendant might secure a sheriff's deed thereto; that the plaintiff relied in good faith upon said representations and promises made by the defendant and was deceived thereby, and permitted the period of redemption allowed by the statute to expire; that the plaintiff was ready, willing and able to pay the amount necessary to redeem the said premises from the said foreclosure proceedings on July 7, 1922, and would have redeemed said premises before the statutory period of one year for redemption had expired had it not relied in good faith upon the said representations and promises of the defendant and been misled and deceived thereby.

"That the statements, representations and promises made by the defendant, Ferdinand Kramer, to J. P. Henn, cashier of the plaintiff bank, and to J. J. Baumgartner, president of the plaintiff bank, and to Jacob Berreth, one of the directors of the Consolidated Lignite Collieries Company, on July 7, 1922, and the statements, representations, promises, conduct, acts and attitude of the defendant, Ferdinand Kramer, at said time towards the plaintiff and its agents caused the plaintiff and its agents to believe, and the plaintiff and its agents relying upon the statements, representations, promises, conduct, acts and attitude of the defendant at said time did believe and expect that the plaintiff had until the 13th day of July 1922, in which to redeem, and that the said defendant Kramer had knowledge that the agent of the plaintiff bank so expected and believed that the plaintiff had until the 18th day of July, 1922, in which to redeem, and that this knowledge of the defendant, Kramer, coupled with his conduct in notifying Mr. Henn, cashier of the plaintiff bank, at about three o'clock Central time, on Saturday afternoon, July 8th, 1922, that the deal which he made the previous day for the purchase of the second mortgage was off, and without notifying Mr. Henn that the plaintiff did not have until the 18th day of July in which to redeem, amounted to bad faith, and that he, the defendant, was then and there thereby trying to take advantage

of the forms and technicalities of the law in order to deprive the plaintiff bank of its right to redeem, and that his said conduct lulled the plaintiff bank into a false security and that the actions of the defendant Kramer in notifying Mr. Henn in the manner employed and under all the circumstances of the case at three o'clock on Saturday afternoon that the said deal was off, was an act of exceptionally bad faith."

In our opinion these findings are in accord with the weight of the evidence. It should, also, be noted that the findings are based upon the testimony of witnesses given orally before the court, and that the trial court in ascertaining and determining the facts had the benefit of seeing the witnesses and hearing their stories as the words fell from their lips. The findings are in accord with the testimony given by Henn, Baumgartner and Berreth, and largely opposed to the testimony of the defendant. Defendant was in part corroborated by his wife. It is undisputed, however, that Henn, Baumgartner and Berreth came to defendant's home near New Salem on July 7th, 1922, and that certain discussion then took place as regards the mortgage held by the plaintiff bank. The plaintiff's witnesses testified that the defendant told them that the time of redemption expired July 18th, or rather that the bank had until that time to redeem; and that, after certain negotiations had on that day, the defendant agreed to purchase plaintiff's mortgage. The defendant admits that he had the certificates of sale in the house at the time he talked with plaintiff's officers. He also admits that they talked to him about the mortgage the plaintiff bank held, and sought to induce him to purchase it, but asserts that he refused to do so. He also claims that nothing was said by him to the effect that the bank had until July 18th in which to redeem. Defendant, however, admits that he caused a telephone message to be sent to the plaintiff bank in the afternoon of July 8th to the effect that he would not purchase plaintiff's mortgage. As already stated, we are agreed that the findings of the trial court are supported by the weight of the evidence.

The trial court made no findings as to the value of the land but the evidence clearly shows that such value was greatly in excess of the amount due on defendant's certificate of foreclosure sale.

That a court vested with equity jurisdiction has power to grant relief in cases where the owner of the equity of redemption has been prevented from exercising his right to redeem within the statutory

period by the fraud of one who, as a result of the failure to redeem, obtains title to the premises, is well settled.

In Prondzinski v. Garbutt, 8 N. D. 191, 195, 196, 77 N. W. 1012, this court said:

"The power of courts of equity to give relief in this class of cases has not only been generally recognized, but has also been unhesitatingly exercised when a proper state of facts required it. See Combs v. Little, 4 N. J. Eq. 310, 40 Am. Dec. 207; Laing v. McKee, 13 Mich. 124, 87 Am. Dec. 738; Wilson v. Eggleston, 27 Mich. 257; Adams v. Kable, 6 B. Mon. 384, 44 Am. Dec. 772; Griffin v. Coffey, 9 B. Mon. 452, 50 Am. Dec. 519; Wingate v. Ferris, 50 Cal. 105; Beatty v. Brummett, 94 Ind. 76; Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696; Schroeder v. Young, 161 U. S. 344, 40 L. ed. 726, 16 Sup. Ct. Rep. 512; Tice v. Russell, 43 Minn. 66, 44 N. W. 886. It may also be noted that the result of the establishment of the facts urged as the basis of plaintiff's action is to create a trust relation between him and the defendant. If the defendant secured the sheriff's deed by false promises, and under circumstances which in equity would entitle the plaintiff to relief against it, he would nevertheless hold the land, the title to which he had thus wrongfully acquired, as trustee for the benefit of the plaintiff. Huxley v. Rice, 40 Mich. 73; Combs v. Little, 40 Am. Dec. 207 (see note appended with citations). This court in Jasper v. Hazen, 1 N. D. 75, 44 N. W. 1018, not only announces its adherence to the foregoing principle, but that case, which was somewhat similar to the one at bar, is strongly in point in upholding our view that plaintiff's remedy, is, under the facts stated, exclusively in equity. The doctrine as announced by the court and above referred to is also specifically embodied in § 4263, Rev. Codes: 'One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it.' Under the head of 'Obligation of Trustees,' § 4265, Id., provides that 'a trustee may not use or deal with the trust property for his own profit or for any purpose unconnected with the trust in any manner.' Again section 4273 fixes his liability in the following language: 'A trustee who uses or disposes of trust property contrary to § 4265 may at the option of the beneficiary, be

required to account for all profits so made or to pay the value of its use and if he has disposed thereof, to replace it with its fruits or to account for its proceeds with interest.' Thus, not only does the statute declare that a trust relation results, but to some extent, at least, fixes the liability of the trustee; and should it appear that the plaintiff is entitled to relief, and the land in question and its fruits are not restored to him, if such is his election, he may recover its value, with interest, or the proceeds of the sale, with interest, as he may elect,—in either case deducting the amount due upon the sheriff's certificate. The facts which go to show the existence of the trust relation in this class of cases, as already stated, not only appeal directly to a court of equity, but the effect of successfully establishing them results in the finding of a trust, which is peculiarly of equitable cognizance."

Defendant's counsel, however, contends that the facts in this case distinguish it from Prondzinski v. Garbutt, supra, and that the findings of fact in this case do not justify the conclusions drawn and the judgment entered by the trial court. The specific contention is that in any event the defendant merely promised to purchase plaintiff's mortgage, and expressed the opinion that the period of redemption did not expire until about July 18th and that there was no agreement between the parties, as existed in Prondzinski v. Garbutt that additional time in which to redeem would be allowed after the period for redemption had expired. In our opinion this contention is devoid of merit. The right to equitable relief against fraud, and the power of a court exercising equitable jurisdiction to award such relief, do not rest upon any such narrow foundation. It is axiomatic that "when the reason is the same the rule should be the same" (Comp. Laws 1913, § 7245); and that " the law respects form less than substance." (Comp. Laws 1913, § 7262). The important question in a case like this is whether the sheriff's deed, which it is sought to have vacated, was obtained as a result of fraud or deception practiced upon the owner of the equity of redemption by the grantee in such deed. If under the facts that question must be answered in the affirmative, then the means by which the fraud was perpetrated is of no particular moment. Laing v. McKee, 13 Mich. 124, 126, 87 Am. Dec. 738. See also Wilson v. Eggleston, 27 Mich. 257; Trotter v. Smith, 59 Ill. 240.

The facts in this case, as established by the evidence and found by

the trial court, are that on July 7th, 1922, the officers of the plaintiff came to the defendant's home for the purpose of making redemption and paying him the amount due on his certificate of sale; that the defendant first informed these persons that the period of redemption did not expire until about July 18th and subsequently made an unqualified promise to purchase plaintiff's mortgage; that plaintiff's officers relied both on defendant's statement as to the date of expiration of the redemption period and his promise to purchase the mortgage, and because of such reliance refrained from making redemption; that if defendant had not made such statement and promise plaintiff would have made redemption on that day; that the statement and promise so made by the defendant were both made in bad faith; that he had no intention of keeping his promise, and either knew that his statement, as to the date of the expiration of the period of redemption, was false or made it recklessly and without regard to its truth or falsity, although the means for ascertaining the correctness of such statement was right at hand. It is manifest that the right of redemption was a valuable right to the plaintiff and that the defendant will greatly benefit if plaintiff is precluded from exercising this right. The plaintiff acted promptly on the discovery of the fraud and there is no contention that the rights of any innocent third party have intervened.

Defendant further contends that his statement to the effect that the redemption period did not expire until about July 18th, in any event, merely operated to extend the redemption period to that date, and that consequently it was incumbent upon the plaintiff to proceed to redeem within that time in a manner provided by §§ 7756–7760, Comp. Laws 1913. In our opinion this contention is not well founded. These statutory provisions prescribe the procedure to be employed in cases where redemption is made within the statutory period. In such cases a redemption is fully accomplished by a compliance with the statute regardless of whether the owner of the certificate of sale is willing to permit a redemption to be made. That is, when the redemptioner has complied with the provisions of the statute relating to redemption no further action is necessary on his part. But in a case like this, where the owner of the equity of redemption is prevented from exercising his right to redeem in the statutory manner, the mode prescribed by statute for the exercise of the right is neither available nor effective. In

such case it becomes necessary to invoke the aid of a court vested with equity jurisdiction to obviate the consequences of failure to redeem within the time and in the manner prescribed by the statute. The very basis for the invoking of equity jurisdiction is that the redemptioner was prevented from exercising his statutory right of redemption in the manner prescribed by the statute by the fraud or deception of the adverse party.

In this case it is undisputed that on the 12th day of July, 1922, plaintiff offered to redeem and stood ready and willing to pay to the defendant the full amount due on the certificate of sale and actually offered to pay the defendant the full amount so due, but that the defendant refused to accept such moneys solely on the ground that the period allowed by law for making redemption had expired. At this time the statutory period for redemption had expired and the statutory mode of redemption was no longer available to the plaintiff, as the defendant, by the fraud he had practiced on the plaintiff, had effectively prevented plaintiff from exercising this right and plaintiff was compelled to invoke the aid of equity to be relieved from the consequences resulting from such fraud.

It is further contended that plaintiff's mortgage was invalid, and did not confer upon plaintiff the right to redeem. This contention is based upon certain alleged defects in the signature of the mortgagee and in the acknowledgment of the mortgage. In our opinion the contention is not well founded. Our statute (Comp. Laws 1913, § 7753) provides:

"Property sold subject to redemption, or any part sold separately, may be redeemed in the manner hereinafter provided by the following persons or their successors:

1. The judgment debtor or his successors in interest.

2. A creditor having a lien by judgment, mortgage or otherwise on the property sold or on some share or part thereof, subsequent to that on which the property was sold.

The persons mentioned in the second subdivision of this section are in this chapter termed redemptioners."

There can, we think, be no doubt but that the plaintiff is a redemptioner, as defined by this statute. See also Jones, Mortg. 7th ed. §§ 1055 et seq. The mortgage was clearly valid as between the mortgagor and mortgagee. As already stated, it is undisputed that the Consoli-

dated Lignite Collieries Company received from the plaintiff bank the full amount which the mortgage was given to secure. It is also undisputed that the bank made the loan with the express understanding that the proceeds thereof were to be used to pay part of the purchase price of the premises on which the mortgage was given. It is further undisputed that the officers of the collieries company did so use the money, and that every cent thereof was paid over to the defendant as part payment of the purchase price, and that it was such payment which enabled the collieries company to obtain the deed to the premises.

It is further contended that plaintiff failed to comply with the provisions of the judgment in this that it failed to pay the amount necessary to effect a redemption within the time specified in the judgment. Manifestly this does not affect the validity or correctness of the judgment, and constitutes no ground for disturbing it. From the record transmitted to this court it appears, however, that shortly after the trial court made its findings of fact and order for judgment, it made an order, upon the application of defendant, to the effect that "all proceedings" in the action with the sole exception of the entry of judgment be stayed for a period of sixty days. If the period included within such stay is excluded, plaintiff did comply with the judgment as regards the payment of the moneys required to be paid to effect a redemption.

The evidence shows and the trial court found that shortly after the sheriff's deed was executed and delivered to the defendant herein, he executed a mortgage upon the premises to secure the payment of the sum of $1,600. The trial court found that there was due to the defendant upon his sheriff's certificate of sale a total sum of $10,904.70, and it directed that this amount be paid to the defendant or to the sheriff of Morton County within sixty days; provided however that the defendant should cause the said $1,600, mortgage to be satisfied and released, and in the event of the defendant's failure to do this that then the sum of $1,728, being the amount of the principal and accrued interest on said $1,600, mortgage, be deposited with the clerk of the district court and the balance of the said $10,904.70 paid to the defendant. Defendant asserts that this provision is erroneous. Apparently the contention is that the defendant should be permitted to receive the full

amount due on his certificate and yet leave the premises incumbered by a mortgage which he placed thereon after he had obtained title in violation of the rights of the plaintiff by means of fraud perpetrated upon it. The fallacy of this contention is so apparent that to state the contention is to answer it. The provision made by the district court is eminently just and fair and safeguards the rights of both parties.

It is further contended that the defendant placed valuable improvements in the mine and that in any event he is entitled to be compensated therefor. On this feature of the case the trial court found:

"That the defendant has operated for his own use and benefit the coal mine on said premises from the time of the foreclosure of the said Kramer mortgage on July 9, 1921, and that since July 9, 1921, the defendant has mined and taken out of the coal mine on said premises approximately six thousand tons of coal, and that the use and operation for his own benefit of said coal mine by the defendant has justly and equitably compensated the defendant for any and all expenditures the said defendant has made on or about said premises during the time the defendant has been in possession and control of said premises under and by virtue of the said sheriff's certificate and said sheriff's deed executed to him for said premises."

This finding is sustained by a preponderance of the evidence and is decisive of the question.

The defendant, also, predicates error upon the denial of his motion for a new trial. It is asserted that the defendant was entitled to a new trial on the ground of newly discovered evidence. The requisites of a motion for a new trial on such ground are:—(1) The evidence must be newly discovered; (2) It must be material; (3) It must be such that the moving party could not with reasonable diligence have discovered and produced the same at the trial of the action. Comp. Laws 1913, § 7660, subd. 4. In order to be entitled to a new trial on this ground, the moving party must present to the trial court a showing sufficient to satisfy that court that the evidence has the three qualifications prescribed by the statute. Whether the moving party has sustained the burden placed upon him is primarily a question to be determined by the trial court by the exercise of sound judgment, in the light of the facts and circumstances, and the appellate court will interfere only when the decision of the trial court is so clearly wrong that it

must be said that it has abused the discretion with which it is vested in determining motions of this kind. Aylmer v. Adams, 30 N. D. 514, 528, 153 N. W. 419.

The affidavit presented by the defendant for the purpose of showing that the evidence was newly discovered was made by defendant's counsel and not by the defendant. In fact there is no affidavit on the part of the defendant himself on any feature of the motion for a new trial. So far as the showing made is concerned it is entirely possible that the defendant might have known of the evidence which it is asserted is newly discovered and been able to produce the same at the trial. This proposition alone is sufficient to preclude this court from interfering with the decision of the trial court. Aylmer v. Adams, 30 N. D. 514, 529, 153 N. W. 419. Apparently, however, the trial court did not decide the motion on this ground, but gave careful consideration to the same in its widest aspect and determined that even in light of the so called newly discovered evidence the judgment rendered was just and right. No reason appears for interfering with this determination. The judgment and order appealed from are affirmed.

BRONSON, Ch. J., and NUESSLE and JOHNSON, JJ., concur.

Mr. Justice BIRDZELL did not participate.